ALAMO EXPRESS, INC., Brown Express, Inc., Red Arrow Freight Lines, Inc., and Southwestern Motor Transport, Inc., Plaintiffs,

v.

The UNITED STATES of America, the Interstate Commerce Commission, Central Freight Lines, Inc., W. W. Callan, and Inland Motor Freight Lines, Inc., Defendants.

Civ. A. No. 3485.

United States District Court
W. D. Texas,
San Antonio Division.

March 20, 1965.

Felts & Robinson, by Dan Felts, Austin, Tex., for Alamo Express, Inc.

Rawlings, Sayers, Scurlock & Eidson, by Reagan Sayers, Fort Worth, Tex., for Brown Express, Inc.

Ewell H. Muse, Jr., Austin, Tex., for Southwestern Motor Transport, Inc.

Richey, Sheehy, Teeling & Cureton, by W. E. Cureton, Waco, Tex., for Central Freight Lines, Inc. and W. W. Callan.

Henry Valdespino, Asst. U. S. Atty., San Antonio, Tex., and John H. D. Wigger, Atty., Dept. of Justice, Washington, D. C., for United States of America.

Robert W. Ginnane, Gen. Counsel and Arthur J. Cerra, Asst. Gen. Counsel, Interstate Commerce Commission, Washington, D. C., for Interstate Commerce Commission.

Before BROWN, Circuit Judge, SPEARS, Chief Judge, District Court, and SUTTLE, District Judge.

SUTTLE, District Judge.

Plaintiffs brought this action to set aside, annul and enjoin orders of the Interstate Commerce Commission granting authority under Section 5(2)(a) of the Interstate Commerce Act, 49 U.S.C. § 5(2)(a), to CENTRAL FREIGHT LINES, INC., to acquire control of INLAND MOTOR FREIGHT LINES, INC., through purchase of capital stock, and in turn to W. W. CALLAN, controlling stockholder of CENTRAL, by virtue of the transaction. Their main complaint is that after they had won several prior rounds before the Commission as protestants to the Defendants' application for control, the Commission suddenly re-

versed itself and held against them and granted the orders in question to Defendants. Plaintiffs attack the final orders as being arbitrary, unsupported by the evidence, and in excess of the authority granted to the Commission by Congress. While the course of the litigation has been long, complex, and at times uncertain, we find nothing in the record to justify a reversal of the Commission's Orders, or a remand to it for any further consideration.

The main issue through the Commission proceedings ultimately came to be whether or not the split-off or separation of intrastate operating rights from interstate rights by INLAND to ALAMO and SOUTHWESTERN should result in denial of CENTRAL and CALLAN'S application to control INLAND. The separation of intrastate from interstate rights took place as follows: Blake Gillan, presently the principal stockholder of INLAND, acquired the capital stock of INLAND from James S. McNamara in December, 1957. McNamara had obtained the stock in early 1956 from J. H. Robinson, who prior thereto caused INLAND to lease its Texas intrastate rights to SOUTHWESTERN and ALAMO on long-term leases. Thereafter, Robinson personally acquired the reversionary interest in the rights leased to Alamo and Southwestern with the approval of the Railroad Commission of Texas. Since Robinson's death these reversionary interests have belonged to Robinson's Estate. SOUTHWESTERN and ALAMO are using the described leased intrastate rights for the performance of interstate operations, under the "grandfather" clause of Section 206(a)(7) of the Act. The leased intrastate rights in question parallel most of INLAND'S certificated interstate rights. The plaintiffs contended, with success until the orders in question were granted, that this split-off contravened the policy of the Commission of declining to approve transactions where the severance of interstate and corresponding intrastate rights, previously operated by a single carrier, resulted in the creation of two rights and

two operations in the place of one. The Commission eventually decided that the situation presented by the instant fact situation was controlled by an exception to this policy which relieved "non-offending" parties to the split-off of the prohibition, and approved the Defendants' applications.

## HISTORY OF THE PROCEEDINGS

In October, 1960, the Commission on its own motion instituted an investigation under Section 5(7) of the Act to determine whether the control or management of INLAND had been effectuated by CENTRAL and CALLAN, principal stockholder and chairman of CENTRAL'S Board of Directors. This case, Number MC–F–7682, is known as the Investigation Case.

In May, 1961, CENTRAL and CALLAN filed application under Section 5 of the Act to acquire control of INLAND through purchase of its capital stock. This case, Number MC–F–7882, is known as the Control Case.

In the Control Case, an application under Section 210a(b) of the Act for temporary control by CENTRAL of INLAND through management was approved by Commission Order on September 5, 1961. Because of common facts and issues, the Commission proceeded to dispose of both the control and investigation proceedings on the same record and in reports combining the actions.

In its first report, January 11, 1963, the Commission concluded that the control and management of INLAND in a common interest with CENTRAL had been effectuated and was in violation of Section 5(4) of the Act and had continued until September 5, 1961, when terminated by the grant of temporary control authority. The violation, however, was found not to be such as to preclude CENTRAL as being unfit to control INLAND, nor so aggravated as to prevent approval in the control case; *if it could otherwise be found to be consistent with public interest.* Because of the split-off, however, the application in the control case was denied and an order

entered directing divestiture of stock in INLAND by the defendants herein.

In its second report, November 15, 1963, the Commission modified the Orders requiring divestiture to permit the respondents in the investigation case to employ any lawful means of preventing further violation without the necessity of complete divestiture. The reconsideration by the Commission of its divestiture order came as the result of the decision of the United States Supreme Court in Gilbertville Trucking Company v. United States, 371 U.S. 115, 83 S.Ct. 217, 9 L. Ed.2d 177 (1962), which indicated that divestiture could often be too harsh a measure to obtain compliance with Interstate Commerce rules and regulations.

Finally, on June 29, 1964, the Commission reversed its prior order of denial and granted CENTRAL authority to control INLAND subject to a condition not in issue, based upon a finding that the individual applicants had not been responsible for the split-off, and that CENTRAL'S acquisition of control of INLAND would be consistent with the public interest, applying for the first time an exception to the Commission's policy against split-offs, which had been announced by the Commission in Shein's Express—Purchase—Leo Smith Forwarding Company, Inc., 80 M. C. C. 511 (1959). The last order of the Commission, dated October 20, 1964, found that the June 29, 1964, order was within the Commission's discretion and denied Plaintiffs' Petitions for Reconsideration.

## SCOPE OF REVIEW

All parties are agreed as to limited scope of review here. Our duty is to determine whether the conclusions of the Commission "finds support in the record as a whole, * * *. 'even though the Court would justifiably have made a different choice had the matter been before it de novo';" NLRB v. Fant Milling Co., 360 U.S. 301, at 309, 79 S.Ct. 1179, 1184, 3 L.Ed.2d 1243 (1959); United States v. Pierce Auto Freight Lines, 327 U.S. 515, 66 S.Ct. 687, 90 L. Ed. 821 (1940); § 10(e), Administrative Procedure Act, 5 U.S.C. § 1009(e). If the Commission has made adequate findings which are supported by substantial evidence, this Court may not set aside the orders even though it may disagree with such findings, ICC v. Union Pacific R. Co., 222 U.S. 541, at 547, 32 S.Ct. 108, 56 L.Ed. 308 (1922); Rochester Tel. Corp. v. United States, 307 U.S. 125, at 139, 140, 59 S.Ct. 754, 83 L.Ed. 1147 (1939); Universal Camera Corp. v. NLRB, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951). " 'The wisdom and experience of (the) commission', not of the courts, must determine whether the proposed consolidation is 'consistent with the public interest.' * * * If the Commission did not exceed the statutory limits within which Congress confined its discretion and its findings are adequate and supported by evidence, it is not our function to upset its order." McLean Trucking Co. Inc. v. United States, 321 U.S. 67, at 87, 64 S.Ct. 370, 381, 88 L.Ed. 544 (1944).

We find that the Commission had the authority to reopen for reconsideration and to rescind or modify prior orders and did not abuse its discretion in so doing here; that the Commission's finding approving the transaction as consistent with the public interest is supported by the record, and was not arbitrary, unreasonable nor an abuse of discretion; and that the Commission's finding of no dormancy of INLAND'S operating rights is supported by substantial evidence.

## CONTINUING JURISDICTION OF ICC

The plaintiffs' attack on the Orders of June 24, 1964, and October 20, 1964, as being in excess of Commission authority is without merit. The Interstate Commerce Act itself gives the Commission a continuing jurisdiction over its orders, thereby allowing it to modify and even rescind a great number of them at any time, Sections 17(6), 17(7) and 221(b) of the Interstate Commerce Act. There appears to be no such cut-off date, after which the Commission could not rescind or modify its orders, as is found

in the National Labor Relations Act, 29 U.S.C. § 160(e) which prevents such action by the agency after the filing of the administrative transcript with the reviewing court, In the Matter of the National Labor Relations Board, 304 U.S. 486, 58 S.Ct. 1001, 82 L.Ed. 1482 (1938); Ford Motor Co. v. NLRB, 305 U.S. 364, 59 S.Ct. 301, 83 L.Ed. 221 (1939). Similar action on the part of the Commission has been sustained by the Courts in Baldwin v. Scott County Milling Co., 307 U.S. 478, 59 S.Ct. 943, 83 L.Ed. 1409 (1939); Sprague v. Woll, 122 F.2d 128 (7th Cir. 1941, cert. denied, 314 U.S. 669, 62 S.Ct. 131, 86 L.Ed. 535); Erie R. R. Co. v. United States, 59 F. Supp. 748, 64 F.Supp. 162 (S.D.Ohio 1945).

▮▮▮ In addition to the continuing jurisdiction granted to the Commission by Congress and approved by the Courts, we have in the instant case the fact that the Commission actually exercised such authority here by specifically delaying the effective date of its Orders, within which period the various parties before the Commission filed the various applications for reconsideration which have ultimately brought the litigation before us. Finally, we find that the Commission did not abuse its discretion in reconsidering the merits of the controversy in light of its exception to the policy against split-offs, because an application by the Defendants here as Plaintiffs prior to their having called such exception (as embodied in Shein's case) to the attention of the Commission might well have resulted in our dismissal of their petition for not having exhausted the administrative remedies before the Commission, or a remand to it for the purpose of considering the exception, Cf. Walker v. United States, 204 F.Supp. 918, 208 F.Supp. 388 (W.D.Tex.1961). The fact that the Commission reconsidered the matter in light of the Shein exception without a three-judge court having said it should do so does not make its action in so doing arbitrary. Finding no abuse of discretion in applying a recognized exception which had not earlier been called to its attention, we have no reason to reverse or remand to the Commission; United States v. Pierce Auto Freight Lines, 327 U.S. 515, at 534, 535, 66 S.Ct. 687, 90 L.Ed. 821 (1946); ICC v. Jersey City, 322 U.S. 503 at 514 thru 518, 64 S.Ct. 1129, 88 L.Ed. 1420 (1944); Carolina Scenic Coach Lines v. United States, D.C., 59 F.Supp. 336, at 337, affirmed 326 U.S. 680, 66 S.Ct. 37, 90 L.Ed. 398 (1945); Yourga v. United States, D.C., 191 F.Supp. 373, at 376–378 (1961). On the contrary, self-correction of its own errors through the use of judicial inventiveness and imaginative resourcefulness should be the aim of a well run administrative agency. F.T.C. v. J. Weingarten, Inc., 336 F.2d 687, 695–697 (5th Cir. 1964).

## APPROVAL OF CONTROL

▮▮▮ In view of the history of the litigation and the record before the Commission and this Court, we cannot say that the final action of the Commission in approving the control of INLAND by CENTRAL was unreasonable. The mere fact that the Commission had found on January 11, 1963, that the proposed control would not be consistent with the public interest did not prevent the Commission from later finding that it would be, in view of the subsequent considerations brought to bear before the Commission. If supported by substantial evidence, the Commission's final order cannot be attacked solely because it may be, or seems to be, inconsistent with findings in other proceedings before it, Virginian R. Co. v. United States, 272 U.S. 658, at 665, 666, 47 S.Ct. 222, 71 L.Ed. 463 (1926). The Commission's report of January 11, 1963, makes it clear that the main basis for denial of the control application was its general policy against approving split-offs. The initial report also stated that although the violation of the law (control) had been established in the investigation phase of the case, such violation was not so severe as to bar approval of the control application if it could otherwise be found to be consistent with the public interest. The Commis-

sion's policy against split-offs was held, however, to prevent approval. The report of November 15, 1963, was necessitated because of the Gilbertville case in which the Supreme Court indicated that divestiture, as previously ordered in the instant case, was often unnecessarily punitive instead of merely corrective, which was set out as the proper function of the Commission's exercise of power. The issue of whether or not to apply the general policy of the Commission against split-offs, or, on the other hand, to apply the one recognized exception to such policy, i. e., that applications resulting in approval of split-offs would not be automatically denied where the parties before the Commission were not directly responsible for such split-off, is one which we feel the Commission is as well if not better equipped to decide than is this Court. Having taken into consideration the admonition of the Supreme Court in the Gilbertville case—to correct and not to punish—and having found that the parties before it had not been responsible for the split-off, and further that approval of the control by CENTRAL was a possible step toward permanent reunification of a significant part of the severed rights of INLAND which would be an improvement for the status quo, we cannot say that the orders of June 29, 1964, did not have a rational basis. We can also see why the Commission decided that the Yellow Transit Case, 65 M.C.C. 775, was not deemed to prevent approval, in view of the exception to the split-off doctrine expressed by the Commission in Shein's case, since there INLAND'S position was tainted by the split-off while the parties responsible for same still owned INLAND.

### DORMANCY

The Commission's finding, starting with its report of January 11, 1963, and continuing on through its report of June 29, 1964, that the self-conducted operations of INLAND were not dormant appears to be supported by substantial evidence. The mere presence of the power of control over it by CEN-

TRAL does not negate as a matter of law such finding.

All of the parties have litigated fully all of the issues of both law and fact and appear to have brought before the Commission all relevant factors and the results appear to be just and well founded upon the record brought before us. Since we find the Interstate Commerce Commission orders to be valid, we see no reason to continue the injunction, 28 U.S.C. § 2324, and, therefore, affirm the Orders of the Commission and hereby dissolve the temporary injunction.