**RESORT BUS LINES, INC., Plaintiff,**

v.

**The INTERSTATE COMMERCE COMMISSION and the United States of America, Defendants,**

and

**Mountain View Coach Lines, Inc., Intervenor-Defendant.**

**Civ. No. 66–2641.**

United States District Court
S. D. New York.
March 6, 1967.

---

18. These documents may be submitted to the Court under seal.

Samuel B. Zinder and Arthur J. Piken, Jamaica, N. Y., for plaintiff.

Donald F. Turner, Asst. Atty. Gen., John H. D. Wigger, Attorney, Department of Justice, Washington, D. C., Robert M. Morgenthau, U. S. Atty. for Southern District of New York, for United States of America.

Robert W. Ginnane, General Counsel, Henri F. Rush, Jr., Attorney, Interstate Commerce Commission, Washington, D. C., for Interstate Commerce Commission.

James H. Glavin, III, Waterford, N. Y., for intervenor-defendant; Louis Lustenberger, New York City, Attorney of Record.

Before KAUFMAN, Circuit Judge, and WEINFELD and MacMAHON, District Judges.

## OPINION

Irving R. Kaufman, Circuit Judge:

Resort Bus Lines, Inc. (Resort) seeks to have certain orders of the Interstate Commerce Commission (Commission) set aside and enjoined.[1] The orders in question granted the application of Mountain View Coach Lines, Inc. (Mountain) for a certificate of public convenience and necessity, authorizing it to conduct interstate operations between Poughkeepsie, New York and Millbrook, New York, a distance of approximately 17 miles, and to serve all intermediate points.

Before we consider Resort's contentions, it is necessary to summarize briefly the prior proceedings. In February 1964, Mountain filed its application with the Commission. At that time, Mountain was conducting authorized intrastate operations between Millbrook and Poughkeepsie, and licensed interstate activities between Poughkeepsie and various points. By virtue of an operating agreement with Hudson Transit Lines, Inc. (Hudson), Mountain was already conducting interstate operations between Poughkeepsie and New York City via

1. This three-judge court has jurisdiction pursuant to 28 U.S.C. §§ 1336, 2284, 2321–2324 and 5 U.S.C. § 1009.

New Jersey.[2]  Passengers desiring to travel by bus from Millbrook to New York City would buy a ticket from Mountain for the trip from Millbrook to Poughkeepsie; upon arriving in Poughkeepsie, they would be required to change buses and purchase a second ticket for the trip from Poughkeepsie to New York City. This inconvenience to the traveling public could not be eliminated so long as Mountain held only intrastate authority to operate between Millbrook and Poughkeepsie, because Mountain's intrastate authority could not be joined with Hudson's interstate authority to provide one whole and uninterrupted service. Mountain's purpose, therefore, in seeking the interstate authority was to enable it to provide through and unbroken service from Millbrook to New York City, thus eliminating the discommodious and bothersome aspects inherent in requiring passengers to purchase 2 tickets and change buses in Poughkeepsie for the trip to New York City.

Accordingly, a hearing on Mountain's application was held before a Hearing Examiner in July 1964. Resort, which operated a bus route that passed through Millbrook, was the only protestant. The Hearing Examiner made his report recommending that Mountain's application be approved and Resort thereupon filed exceptions. In December 1964, Operating Rights Review Board No. 3 reversed the Examiner and denied Mountain's application. Mountain then proceeded to file a petition for reconsideration, but the Board's decision was summarily affirmed in April 1965 by Division 1 of the Commission Acting as an Appellate Division.[3]  When Mountain petitioned the Appellate Division to reconsider its order, the proceedings were reopened, and in October 1965 the Appellate Division after further reflection concluded that the interstate authority sought by Mountain was required by the public convenience and necessity. Mountain View Coach Lines, Inc., Extension-Poughkeepsie, 100 M.C.C. 24 (1965). Subsequent petitions by Resort requesting the Appellate Division to reconsider its decision were denied, and in August 1966 a certificate of public convenience and necessity was issued to Mountain.[4]

■ With this background, we proceed to consider the contentions raised. At the outset, it is urged that the Appellate Division lacked jurisdiction to reconsider and reverse its original decision and order. While it is true, as Resort contends, that no section of the Interstate Commerce Act (Act) states, *in haec verba*, that an Appellate Division may reconsider its own actions, we believe that it has the power to do so, at least prior to the time that an actual cer-

2. Poughkeepsie and Millbrook (the latter located northeast of Poughkeepsie) are situated on the eastern side of the Hudson River in New York State. Hudson's bus route was from New York City through New Jersey, then by way of that portion of New York State which lies to the west of the river, and finally across the Hudson River to Poughkeepsie.

3. While the Interstate Commerce Act speaks in terms of petitions for "reconsideration," 49 U.S.C. § 17(6), it should be noted that Mountain's first petition was actually a request that the Appellate Division "review" the Review Board's decision. This type of petition for reconsideration must be distinguished from the subsequent petitions filed by both Mountain and Resort which asked the Appellate Division to "reconsider" its own orders.

4. In May 1966, some 7 months after the Appellate Division had granted Mountain's application, the New York Public Service Commission granted an application by Resort to operate intrastate bus service between Millbrook and New York City via the east side of the Hudson River. The only juncture that this route had in common with that served by Mountain, was the town of Millbrook. Resort's path does not pass through Poughkeepsie, the intermediate points between Millbrook and Poughkeepsie, or the towns in New Jersey that are on Mountain's route to New York City. Nor does Resort serve the same towns in upstate New York that are serviced by Mountain. Thus, the two routes to New York City basically serve very different populations.

tificate of convenience and necessity has been issued.

■■■ The provisions of the Act and sound rationale lead us to this conclusion. 49 U.S.C. § 17(1) provides that the Commission may divide itself into divisions, and "may designate one or more of its divisions as appellate divisions." This authority was granted in order to spare the full Commission the burden of considering every application for review.[5] Section 17 goes on to state that "any application [for rehearing, reargument or reconsideration], [i]f the decision, order or requirement was made by the Commission, shall be considered and acted upon by the Commission." 49 U.S.C. § 17(6). And, other sections of the Act provide that "The Commission shall be authorized to suspend or modify its orders upon such notice and in such manner as it shall deem proper", 49 U.S.C. § 16(6), and that Commission orders shall continue in force "unless the same shall be suspended or modified or set aside by the Commission". 49 U.S.C. § 321(b).

These provisions have been interpreted as giving the Commission continuing jurisdiction to suspend, reconsider or modify its orders, see e. g., Alamo Express, Inc. v. United States, 239 F.Supp. 694 (W.D.Tex.), aff'd per curiam, 382 U.S. 19, 86 S.Ct. 83, 15 L.Ed.2d 14 (1965); United States v. Interstate Commerce Commission, 221 F.Supp. 584 (D.D.C.

1963), even in the absence of a petition for reconsideration, see Sprague v. Woll, 122 F.2d 128 (7th Cir. 1941), cert. denied, 314 U.S. 669, 62 S.Ct. 131, 86 L.Ed. 535 (1942). And the Supreme Court has stated that "the certificate is the final act or order that validates the operation. Until its form and content are fixed by delivery to the applicant, the power to frame it in accordance with statutory directions persists." United States v. Rock Island Motor Transit Co., 340 U.S. 419, 448, 71 S.Ct. 382, 398, 95 L.Ed. 391 (1951).

■ We can see no reason why, if the Commission possesses this continuing jurisdiction, an Appellate Division doing the work of the Commission at least should not have the same power. The Appellate Division is merely sitting in lieu of the full Commission for reasons of administrative efficiency, in the manner that a panel of a Court of Appeals, instead of the entire contingent of judges of the Court, is authorized to decide appeals. Moreover, it is in the best interests of judicial economy and agency responsibility to allow the Appellate Division to reconsider its orders, rather than to compel the losing party to seek immediate review in the courts.[6] Thus, both logic and sound policy require that the Appellate Division be empowered to reconsider its own actions. We therefore reject Resort's jurisdictional argument.[7]

5. For a discussion of the legislative history, see Transamerican Freight Lines, Inc. v. United States, 258 F.Supp. 910, 916–918 (D.Del.1966). Resort relies heavily on that decision to support its jurisdictional argument, but that reliance is misplaced. The court in *Transamerican* decided only that the Commission lacked the power to review a decision of one of its appellate divisions. Moreover, the Commission has declined to follow that ruling. See Eazor Express, Inc.,—Purchase-Fleet Highway Freight Lines, Inc., 101 M.C. 719 (1967). No consideration was given in *Transamerican* to the issue facing us—whether an Appellate Division can reconsider one of its own orders.

6. The fact that the losing party may ask the Appellate Division to reconsider its

order does not mean, as Resort seems to suggest, that the order is not administratively final. The aggrieved party may, if it wishes, seek review in the courts rather than look for reconsideration in the Appellate Division. An analogous situation occurs when a panel of a Court of Appeals renders its decision. The losing party may ask the panel to rehear the case, but the decision is nevertheless "final" in the sense that Supreme Court review may be sought without a prior request for rehearing.

7. Resort also refers us to 49 C.F.R., § 1.101(g), which provides, in part, that "When an appellate division has denied a petition seeking reversal, change, or modification of an original determination by a board * * * any further petition

■ Resort also asks us to set aside the Commission's orders because it excluded evidence of Resort's intrastate operations in determining whether the public convenience and necessity requirements had been met. An examination of the record, however, indicates that these operations were carefully considered at every stage of the proceedings. For example, at the hearing before the Examiner, Resort offered evidence of its pending application before the New York Public Service Commission requesting intrastate authority to operate between Millbrook and New York City. The Examiner received this evidence over the objection of Mountain. And the Examiner's report, recommending approval of Mountain's application, made reference to Resort's application to the Public Service Commission.

We also note that evidence of Resort's intrastate activities was considered by the Review Board, and, indeed, one of the reasons assigned for its reversal of the Examiner's recommendation was that Resort might soon be in a position (because of its then pending proceedings before the New York Public Service Commission) to provide through service from Millbrook to New York City. Moreover, the Appellate Division, in reversing the Review Board, also took cognizance of Resort's intrastate operations, stating:

> Resort operates only two buses; and, as a practical matter, can serve Millbrook only in conjunction with an essentially long-haul interstate route between Pittsfield [Massachusetts] and New York City. These factors, in our opinion, would preclude the rendition of service responsive to the special needs of the local communities involved. Moreover, its service would be of little, if any appreciable value to the traveling public at the proposed intermediate points. Applicant [Mountain], on the other hand, contemplates a service particularly well adapted to the needs of the Millbrook area, and, in our opinion, it should be granted the limited route extension which it seeks. (100 M.C.C. at 27.)

It is clear to us that the Appellate Division considered the possibility that Resort might be granted intrastate authority between Millbrook and New York City. It concluded, nevertheless, that even if this authority were granted, the public convenience and necessity which it was compelled to appraise required that Mountain's application be granted.

Resort's final argument is that we must enjoin the Commission's orders because "on the record as a whole there is [not] substantial evidence to support [the] agency findings." Universal Camera Corp. v. NLRB, 340 U.S. 474, 491, 71 S.Ct. 456, 466, 95 L.Ed. 456 (1951). Again, however, the record fails to support this contention.

■ Our role in reviewing agency findings is an exceedingly limited one:

> The Commission's function is to draw such reasonable conclusions from its findings as in its discretion are appropriate. As we said in Consolo v. Federal Maritime Comm'n, 383 U.S. 607, 620, 86 S.Ct. 1018, 1026, 16 L.Ed. 2d 131 (1966), "the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." It is not for the court to strike down conclusions that are reasonably drawn from the evidence and findings in the case. Its duty is to determine whether the evidence supporting the Commission's findings is substantial * *.

Illinois Cent. R. R. Co. v. Norfolk & W. Ry., 385 U.S. 57, 69, 87 S.Ct. 255, 262, 17 L.Ed.2d 162 (1966).

---

for reconsideration by the same party * * * upon substantially the same grounds *will not be entertained*." (Emphasis added.) Resort would have us interpret this language as barring the Appellate Division from reconsidering its orders. We agree with the Commission, however, that the regulation merely means that the Appellate Division is not compelled to entertain the petition.

The record in the present case discloses the following evidence, which supports the decision of the Appellate Division.

1. The ticket seller at the Poughkeepsie bus terminal testified that several inquiries had been made by passengers as to why they were unable to obtain through service from Millbrook to New York City.

2. The former operator of the bus route between Millbrook and Poughkeepsie reported that he still received inquiries as to why through service was not available.

3. A representative of Bennett College, which is located near Millbrook, stated that there was a need for more bus service from Millbrook to New York City.

4. An official of the Cardinal Hayes Home for Children testified that many of the parents who came from New York City to visit their children spoke little English, and had difficulty purchasing the second ticket in Poughkeepsie required for the trip to Millbrook.

5. An official of the Millbrook School for Boys stated that there was a need for more bus service between Millbrook and Poughkeepsie.

6. An employee of Hudson testified that residents in some New Jersey communities served by Hudson had inquired whether there was through service between their towns and intermediate points between Millbrook and Poughkeepsie. These intermediate points, he stated, were experiencing growth both residentially and industrially; a "build-up of housing" was occurring with a complementary development of industrial sites in the area.

We believe the record disclosed "substantial evidence" to support the Appellate Division's conclusion. The complaint, therefore, is dismissed. Judgment will be entered accordingly.