CHICAGO AND NORTH WESTERN RAILWAY COMPANY, Chicago, Milwaukee, St. Paul and Pacific Railroad Company, Chicago, Rock Island and Pacific Railroad Company, and Illinois Central Railroad Company, Plaintiffs,

and

Ringle Express, Inc. and Home Transportation Company, Inc., Plaintiffs-Intervenors,

v.

UNITED STATES of America and Interstate Commerce Commission, Defendants,

and

Walter Poole Truck Line, Inc. and Walter Poole, doing business as Poole Truck Line, Intervening Defendants.

Civ. A. No. 68C 2094.

United States District Court, N. D. Illinois, E. D.

March 31, 1970.

J. D. Feeney and J. A. Billington, Chicago, Ill., for plaintiff railroads.

Robert E. Born, Marietta, Ga., Robert C. Smith, Indianapolis, Ind., and Eugene D. Anderson, Chicago, Ill., for the intervening plaintiffs.

John H. D. Wigger, Dept. of Justice, Washington, D. C., for the United States.

Manny H. Smith, Interstate Commerce Commission, Washington, D. C., for the I.C.C.

William J. Boyd, Boyd & Blanshan, Chicago, Ill., for the intervening defendants.

Before SWYGERT, Chief Circuit Judge, and PARSONS and MAROVITZ, District Judges.

## MEMORANDUM OPINION

SWYGERT, Chief Judge.

Plaintiffs, Chicago and North Western Railway Company, Chicago, Milwaukee, St. Paul and Pacific Railroad Company, Chicago, Rock Island and Pacific Railroad Company and Illinois Central Railroad Company bring this action to set aside an order of the Interstate Commerce Commission. The Commission's order granted authority to Walter Poole, doing business as Poole Truck Line of Evergreen, Alabama, to operate as a common carrier over irregular routes carrying traffic composed of tractors and related agricultural machinery and implements from John Deere Company plant sites located at Waterloo, Dubuque, and Des Moines, Iowa, Horicon, Wisconsin, and Moline, Illinois, to points in Alabama and in Georgia on and south of U. S. Highway 280. Motor carriers, Ringle Express and Home Transportation Company, have intervened as plaintiffs and Walter Poole has intervened as a defendant. We hold that the ICC's action was correct and refuse to set aside its order granting a certificate of public convenience and necessity to Walter Poole to operate as a common carrier over the routes in question.

Poole's application, filed on November 27, 1964, was designed to permit Poole to institute a direct single-line operation to replace the circuitous interline arrangement with Cooper Transfer under which the involved traffic had previously been moving. At the time the application was filed, Poole held authority to transport Deere products from the Deere origin points to Mobile and Monroe Counties, Alabama. Traffic interchanged at points in these counties was transported under the authority of Cooper to the points in Alabama and Georgia. Cooper, who no longer wished to participate in this service, testified on behalf of Poole at the application hearing. Poole's application was also supported by twenty-three Deere dealers in Alabama and the areas of Georgia covered by the application. John Deere Company did not support Poole's application. Poole's application was opposed by various railroads including plaintiff railroads and by the intervening plaintiff motor carriers.

The examiner conducted a hearing in March and July of 1965 and, thereafter, issued a recommended report and order granting the application in its entirety. Protestants filed exceptions to this report. Subsequently the Operating

Rights Review Board Number 2 refused to adopt the examiner's recommendation and denied the application in its entirety. Poole filed a petition for reconsideration which was denied by Division 1 of the Commission acting as an Appellate Division. Poole then filed a petition to the full Commission seeking a determination that the proceeding involved an issue of general transportation importance. This petition was denied by order of the Commission in November 1966. Thereafter, in January 1967, Poole instituted an action in the District Court for the Southern District of Alabama to set aside the Review Board's order denying his application. On its own motion, the Commission, on May 2, 1967, vacated the order of the Review Board and reopened the proceeding for reconsideration on the existing record. The district court stayed its own proceedings and on August 23, 1967 the Commission issued its report on reconsideration, adopting the statement of facts and conclusions of the examiner and granting Poole's application.[1] Plaintiff railroads and motor carriers filed petitions for reconsideration which were subsequently denied by the Commission in May 1968. In June 1968 Poole was issued a certificate of public convenience and necessity and in July 1968 the Alabama district court dismissed the action before it. The instant proceeding was instituted in November 1968.

Three issues are presented for decision: whether the Commission may reconsider and reverse a prior decision by an Appellate Division which is administratively final; whether the Commission erred as a matter of law in failing to explain why the prior decision was incorrect and to disclose by adequate findings the basis for its reversal; and whether the Commission's decision granting the certificate is supported by substantial evidence.

I

The plaintiffs maintain that, since the order of Division 1 denying Poole's application is a final administrative action,[2] the Commission is precluded from reopening Poole's application and granting Poole a certificate. This argument misconceives the scope of the Commission's power to remedy its own errors. Section 17(7) of the Interstate Commerce Act gives the Commission continuing jurisdiction over its orders and empowers it to reconsider and to rescind or modify its orders at any time for the purpose of correcting an error or injustice.[3] Baldwin v. Scott County Milling Co., 307 U.S. 478, 59 S. Ct. 943, 83 L.Ed. 1409 (1939); Sprague v. Woll, 122 F.2d 128 (7th Cir.), cert.

1. Of the eleven-member Commission, three commissioners dissented and two did not participate in the decision.

2. Administrative finality is determined by Rule 101(a) (2), 49 C.F.R. 1.101(a) (2), which reads:
    (2) *Administrative finality of division and employee board decisions.* All decisions, orders, or requirements of a division of the Commission in any proceeding shall be considered administratively final, except those involving issues of general transportation importance, those wherein the division reverses, changes, or modifies a prior decision by a hearing officer, and those wherein the initial decision is made by a division: *Provided, however,* That this subparagraph shall not preclude the seasonable filing of a petition for relief under paragraphs (b) and (c) of this section, to be considered and disposed of by the division or appellate division which made the decision, order, or requirements as to which relief is sought. Decisions of an employee board, whether original or on review, are not administratively final. Such employee board decisions shall be subject to review by an appropriate appellate division of the Commission upon the filing of a timely petition in accordance with these rules of practice.

3. Section 17(7), 49 U.S.C. § 17(7), reads in pertinent part:
    If after rehearing, reargument, or reconsideration of [an] * * * order * * * of a division * * * it shall appear that the original * * * order * * * is in any respect unjust or unwarranted, the Commission or appellate division may reverse, change, or modify the same accordingly.

denied, 314 U.S. 669, 62 S.Ct. 131, 86 L. Ed. 535 (1941); Alamo Express, Inc. v. United States, 239 F.Supp. 694 (W.D. Tex.1965). Administrative finality does not terminate this continuing jurisdiction but merely determines the ripeness of Commission action for judicial review. In contrast to certain other regulatory statutes,[4] the Interstate Commerce Act provides no definite cutoff after which the Commission is precluded from reconsidering its orders.[5] In re National Labor Relations Board, 304 U.S. 486, 58 S.Ct. 1001, 82 L.Ed. 1482 (1938).

Plaintiffs attempt to distinguish the instant case by arguing that previous cases have permitted the Commission's jurisdiction to continue only where the Commission has decided to grant authority and where jurisdiction is retained "to shape the form and content of the certificate in light of the applicable statutory directions." In such cases the affirmative step of delivery of the certificate to the applicant estops the Commission from reconsidering its action. Watson Bros. Transportation Co. v. United States, 132 F.Supp. 905 (D.C. Neb.), aff'd per curiam, 350 U.S. 927, 76 S.Ct. 302, 100 L.Ed. 810 (1955). Plaintiffs argue by analogy that the decision to deny an application should be treated in the same way as the affirmative act of delivery of the certificate to the applicant.

Plaintiffs' position in unsupported by case law or by sound policy. In Resort Bus Lines, Inc. v. ICC, 264 F.Supp. 742 (S.D.N.Y.1967), the examiner recommended the grant of a certificate, the Review Board reversed the examiner and denied the application and this denial was affirmed on petition for reconsideration [appeal] by an Appellate Division. On petition for reconsideration by the applicant the Appellate Division reopened on the existing record and granted the application. In the *Resort* case, which, in all relevant respects, is identical to the instant case, the court held that the power of the Appellate Division to reconsider its own action extends "at least prior to the time that an actual certificate of convenience and necessity has been issued." The rationale for its decision, which is equally applicable here, was stated by the court as follows:

Moreover, it is in the best interests of judicial economy and agency responsibility to allow the Appellate Division to reconsider its orders, rather than to compel the losing party to seek immmediate review in the courts. Resort Bus Lines, Inc. v. ICC, 264 F. Supp. 742, 745 (1967).

The position of the court in the *Resort* case has also been followed by the Commission in Eazor Express, Inc.–Purchase–Fleet Highway Freight Lines, Inc., 101 M.C.C. 719 (1967).

The plaintiffs, relying upon Transamerican Freight Lines, Inc. v. United States, 258 F.Supp. 910 (D.C.Del.1966), argue that, regardless of the continuing jurisdiction theory, the Commission is without statutory authority to reconsider the action of one of its Appellate Divisions. Reliance upon the *Transamerican* case is misplaced. The interpretation of the provisions of the Interstate Commerce Act offered by the court in *Transamerican* was expressed sua sponte and was totally unnecessary to the holding of the case. The Commission has rejected the court's obiter dictum, stating that, although the statute and rules limit the right of a party to seek reconsideration by the Commission, they in no way limit the power of the Commission to reconsider on its own motion. Eazor Express, Inc.–Purchase–Fleet Highway Freight Lines, Inc., 101 M.C.C. 719

---

4. Compare Section 10(e) of the National Labor Relations Act, 29 U.S.C. § 160 (e), and Section 19 of the Natural Gas Act, 15 U.S.C. § 717r, which permit reopening any time prior to filing of the administrative record in the reviewing court.

5. The Commission cites thirty cases since 1964 in which it has reopened proceedings while judicial review actions were pending.

(1967). The Commission explained its reasoning as follows:

> The right of an administrative body to reconsider at any time is inherent in the power to decide and is a necessary procedure in order to permit an administrative agency to carry out properly its functions under the enabling statutes. If we were precluded from correcting the error that * * * we find was promulgated in the prior report, justice would be thwarted and would only result in imposing a totally unnecessary burden on a reviewing court to remand the proceeding to us for reconsideration. Eazor Express, Inc.–Purchase–Fleet Highway Freight Lines, Inc., 101 M.C.C. 719, 720 (1967).

The *Eazor* case was cited with apparent approval in Resort Bus Lines, Inc. v. ICC, 264 F.Supp. 742 (1967).

■ We hold, therefore, that the Commission was empowered to reconsider and set aside the Appellate Division's order denying Poole's application. Although the apparently unlimited power given to the Commission to reconsider its orders may be limited in cases where the objecting party demonstrates detrimental reliance or the passage of a long period of time, *cf.* Upjohn Company v. Pennsylvania R. R., 381 F.2d 4 (6th Cir. 1967); Atchison, Topeka & Santa Fe Ry. Co. v. United States, 231 F.Supp. 422 (N.D.Ill.1964); Watson Bros. Transportation Co. v. United States, 132 F. Supp. 905 (D.C.Neb.), aff'd per curiam, 350 U.S. 927, 76 S.Ct. 302, 100 L. Ed. 810 (1955), there is nothing in the record to indicate that the plaintiffs in the instant case were prejudiced by the Commission's reopening of Poole's application.[6]

## II

■ The plaintiffs argue that the Commission is required to give reasons for reconsidering and reversing the Appellate Division's order denying Poole's application. Reliance is placed upon section 8(b) of the Administrative Procedure Act which provides that decisions shall include "findings and conclusions, as well as the reasons or basis therefor, upon all material issues of fact, law or discretion presented on the record." We have found no case holding that the Commission is required to give an apologia for its previous error in addition to making the required findings and conclusions along with accompanying reasons. The question is not why the Commission changed its mind but whether its decision is supported by adequate findings and conclusions.

In its opinion of August 27, 1967, reported in 105 M.C.C. 511, the Commission made sufficient findings for compliance with 8(b) and the Interstate Commerce Act. Contrary to the assertion of plaintiffs, the Commission found that existing services were inadequate. We think the entire thrust of the Commission's decision supports such a finding and hold that a finding of inadequacy of existing services need not be set out in the precise verbal formula proposed by plaintiffs. Although the Commission's discussion of some matters is brief, its adoption of the statement of facts and conclusions of law prepared by

6. Subsequent to the oral argument, by leave of this court, the railroad plaintiffs submitted portions of the record intended to demonstrate prejudice to them resulting from the Commission's decision to reconsider Poole's application. The material presented merely demonstrates that specially equipped flat cars, Brandon Tie-Down Cars, are required to carry heavy agricultural equipment and that Rock Island Railroad made substantial purchases of these cars in 1965 and 1966. The record contains no evidence on purchases which are directly attributable to the Appellate Division's decision to deny Poole's application. The railroads maintain that this information could not be provided since the record was closed. This is an insufficient answer, however, since they have failed to show that they attempted to present evidence either to the Commission, after its decision to reconsider Poole's application on May 2, 1967 or before the Alabama District Court in an effort to defeat dismissal of that action.

the examiner sufficiently informs the parties of the basis of its action and fully complies with the requirements of Section 8(b). Key v. United States, 263 F.Supp. 544, 549 (S.D.Ind.1966).

### III

■ We hold that the Commission's decision granting Poole's application is supported by substantial evidence and refuse to set aside its decision to grant a certificate of public convenience and necessity. In reviewing that decision we recognize the great deference afforded to Commission determinations of public convenience and necessity. In Midwest Emery Freight System, Inc. v. United States, 293 F.Supp. 403, 405 (1968), this court explained its limited function in this respect as follows:

> Our scope of review of that order is limited to determining only whether the findings made by the Commission are supported by substantial evidence on the entire record and whether its conclusion as to public convenience and necessity has a rational basis in the facts found. Administrative Procedure Act, 5 U.S.C.A. § 1009. We are mindful that the criteria by which the Commission makes its determination of public convenience and necessity are not subject to review. No delineation of factors to support such a determination has been expressed in the statute. 49 U.S.C.A. § 307. Congress has entrusted the Commission with a "wide range of discretional authority" to draw that conclusion from "the infinite variety of circumstances which may occur in specific instances."

With this standard in mind we proceed to examine the plaintiffs' specific allegations of insufficiency of the evidence supporting the Commission's findings.

The plaintiffs argue that the Commission makes two conclusions which are necessary to a finding of public convenience and necessity and which are completely unsupported by the evidence. These conclusions are: (1) "that there

is a need for continuation of the service proposed, since discontinuance of the Poole-Cooper interchange would leave shippers without adequate motor carrier service;" and (2) "that the existing carriers will not be affected adversely." We hold that substantial evidence supported both of these conclusions.

The conclusion that existing services were inadequate and that authority for Poole to operate as a common carrier is clearly supported by the record. Contrary to the assertion of plaintiffs, the Commission could reasonably find that Deere dealers could not maintain sufficient inventory of Deere machinery and implements. To satisfy their customers, these dealers needed expedited service in some situations. Although the Commission may have overestimated the actual delivery time by rail (ten days), it is, nevertheless, reasonable to conclude that rail service was inadequate to provide the fast, dependable service required. Moreover, railroads were unable to serve some of the involved dealers because unloading facilities were not located near the dealer's place of business. Thus motor carriage was needed and rail service was inadequate. Home could not provide this service because it lacked authority from the Commission to carry much of the traffic. Ringle possessed adequate authority but many dealers were unfamiliar with Ringle's service. Some dealers who had experience with Ringle's service characterized it as slow and not as satisfactory as that provided by Poole. Although the inadequacy of Ringle's service was not as clearly demonstrated as in the case of the other plaintiffs, we think substantial evidence supports the Commission's finding.

The Commission's conclusion that existing carriers would not be adversely affected by the proposed service is also supported by the record. Since Poole and Cooper had previously been operating over most of the area in question under an interline arrangement, it is unlikely that significant traffic would be diverted from existing carriers. The Commission could reasonably determine

that the greater efficiency of Poole's single line operation would not affect this conclusion. Moreover, the Commission could reasonably conclude that any traffic which was diverted would not significantly affect plaintiff carriers. This is particularly true with respect to Ringle since only one percent of Ringle's total revenue was derived from the delivery of Deere machinery and equipment in Georgia and Alabama.

For these reasons we hold that the Commission properly granted a certificate of public convenience to Poole to operate over the routes in question. Plaintiffs' petition to set aside the order of the Commission is denied.

MAROVITZ, District Justice (dissenting):

Arising under 28 U.S.C. §§ 1396, 2284, 2321, 2325, this is an action to set aside a report and order of the Interstate Commerce Commission (Commission) on reconsideration (Report) in Walter Poole Extension—Tractors to Alabama, No. MC-115162 (Sub.-No. 105), wherein the Commission found that the public convenience and necessity required certain operations by applicant Walter Poole, doing business as Poole Truck Lines (Poole). The case, which is found at 105 M.C.C. 511 (1967), was decided on August 9, 1967, and served on August 23, 1967.

This original application in this matter was filed on November 27, 1964. It was amended to its present form at the oral hearing before the Interstate Commerce Commission conducted by Examiner Allen W. Hagerty at Montgomery, Alabama, on March 25 and 26, 1965, and at Atlanta, Georgia, on July 20, 21 and 22, 1965.

By the amended application, Poole sought a certificate of public convenience and necessity authorizing operation in interstate or foreign commerce as a common carrier by motor vehicle, over irregular routes, of tractors and other related agricultural machinery and implements from the plant sites of John Deere Company at Waterloo, Dubuque, and Des Moines, Iowa, Horicon, Wisconsin, and Moline, Illinois, to points in Alabama and those in Georgia on and south of U. S. Highway 280. 105 M.C.C. at 511. The application was filed to permit Poole to institute a direct single-line operation to replace the circuitous interline arrangement with Cooper Transfer, Inc. (Cooper) under which the involved traffic had been moving, as Cooper no longer wished to participate in this service. 105 M.C.C. at 512-13, 515-16.

A hearing was held before an examiner of the Commission on March 25 and 26 and July 20, 21, and 22, 1965.

Motor carriers opposed to the granting of the application were: Diamond Transportation System, Inc.; Home Transportation Co. Inc.; Jenkins Truck Line, Inc.; and Ringle Express, Inc. (Diamond, Home, Jenkins, and Ringle). Rail carriers opposed were: the Chicago Burlington and Quincy Railroad Company; Chicago Great Western Railway Company; Chicago, Milwaukee, St. Paul and Pacific Railroad Company; Chicago North Western Railway Company; Chicago Rock Island and Pacific Railroad Company; Illinois Central Railroad Company; Norfolk and Western Railway Company; and Waterloo Railroad Company. (North Western, Burlington, C. G. W., Milwaukee, Rock Island, I. C., Waterloo, and N. & W.) After the application was amended, Diamond and Jenkins withdrew their opposition.

By order served February 14, 1966, Examiner Hagerty found that Poole was not a new competitor for the subject traffic and there was a need for the continuance of its service. Exceptions and replies were filed. Thereafter, on June 22, 1966, Operating Rights Review Board Number 2 reversed the Order of Examiner Hagerty and ordered that the application be denied. 103 M.C.C. 906 (1966). Poole filed a Petition for Reconsideration of the Order of the Review Board. By Order served October 11, 1966, Division 1, acting as an Appellate Division, denied Poole's petition for reconsideration.

On October 24, 1966, Poole filed a petition seeking a determination that the proceeding involved an issue of general transportation importance. This petition was denied by the Interstate Commerce Commission on November 8, 1966.

Around January 24, 1967, Poole filed an action, in the United States District Court for the Southern District of Alabama entitled Walter Poole, an individual d/b/a Poole Truck Line, Evergreen, Alabama v. United States of America and Interstate Commerce Commission, Civil Action No. 4423-67-P, in order to set aside the June 22, 1966, order of the Operating Rights Review Board. By order of May 2, 1967, the Interstate Commerce Commission, on its own motion, vacated the order of the Review Board and reopened the proceeding for reconsideration on the present record. Six days later, the Alabama federal case was stayed on motion of the defendants, pending further administrative action.

On August 9, 1967, the Commission, with three Commissioners dissenting, adopted the statement of facts and conclusions of the examiner as its own and granted the amended application. 105 M.C.C. 511 (1967).

Petitions for reconsideration, to which Poole relied, were filed by Home, Ringle, and the railroads. By order served May 13, 1968, the Commission amplifying its report, denied the petitions.

A certificate of public convenience and necessity under which Poole has been operating, was issued on June 14, 1968. Poole's motion to dismiss his action before the District Court in Alabama was granted on July 23, 1968.

The instant action was filed by the North Western, Milwaukee, Rock Island and I.C. as plaintiffs. Home and Ringle became intervening plaintiffs. Poole joined the United States and the Interstate Commerce Commission as an Intervening Defendant. On May 18, 1969, the assets of Walter Poole d/b/a Poole Truck Line, including this Subject Certificate (Sub. 105) were transferred to Poole Truck Line, Inc. with the approval of the Interstate Commerce Commission in Docket No. M.C.F.C. 71243.

The first question presented by the plaintiffs is whether the Commission properly reopened the proceeding for reconsideration on the present record. The question raises two issues: whether the Commission, on its own motion, could reopen the proceeding at all and assuming that a reopening is permissible, whether additional notice and hearing was required before the Commission announced its decision.

Our inability to join the majority opinion stems from our belief that neither 49 U.S.C. § 17(7) nor the cited cases nor any other rationale clearly compels a conclusion that the Commission has continuing jurisdiction at any time to alter an Appellate Division's order. In its entirety, Section 17(7) reads as follows:

(7) If after rehearing, reargument, or reconsideration of a decision, order, or requirement of a division, an individual Commissioner, or board it shall appear that the original decision, order, or requirement is in any respect unjust or unwarranted, the Commission or appellate division may reverse, change, or modify the same accordingly. Any decision, order, or requirement made after rehearing, reargument, or reconsideration, reversing, changing, or modifying the original determination shall be subject to the same provisions with respect to rehearing, reargument, or reconsideration as an original order.

The fullest analysis of this section may be found in Transamerican Freight Lines, Inc. v. United States, 258 F.Supp. 910, 913-919 (D.Del.1966). In that case, a three-judge Delaware panel dissected 49 U.S.C. § 17 and concluded that the statute distinguished between a "division" and an "appellate division." It found that while a decision of an individual Commissioner, a board, or a division could be reconsidered by an appellate division or the Commission, and a

decision of the Commission could be reconsidered by the Commission, no provision was found for reconsideration by the Commission of a decision of an appellate division. Thus, the Court decided that the Commission lacked the power to review a decision of one of its appellate divisions.

The majority has dismissed *Transamerican's* interpretation as dicta. However, whether or not *Transamerican's* position lacks the force of precedent in no way affects the vitality of its logic. We may think it anomolous that an appellate division should not be considered the functional equivalent of a Commission, see Resort Bus Lines, Inc. v. ICC, 264 F.Supp. 742 (S.D.N.Y. 1967), and that the Commission could review an order of itself and every subsidiary body but not review that of an appellate division. Nevertheless, that is the way that the statute is written and that is apparently consistent with the Congressional intent. Transamerican Freight Lines, Inc. v. United States, 258 F.Supp. 910, 916–919 (D.Del.1966).

Not surprisingly, the Commission has rejected the reasoning of the *Transamerican* case. See Eazor Express, Inc., –Purchase–Fleet Highway Freight Lines, Inc., 101 M.C.C. 719, 720–21 (1967). This, in itself, is not controlling, for it is the role of the judiciary and not of self-serving administrative bodies to construe the law.

In the report which gave rise to the instant action, the Commission held:

"This Commission has continuing jurisdiction over its orders which enables it to reconsider, modify, or rescind the orders on its own motion at any time prior to the issuance of a certificate of public convenience and necessity. See Eazor Exp., Inc.–Purchase–Fleet Highway Freight, 101 M.C.C. 719, and Resort Bus Lines, Inc. v. Interstate Commerce Commission, 264 F.Supp. 742 [(S.D.N.Y.)]." 105 M.C.C. at 512.

Defendants and the majority opinion rely on *Resort,* 264 F.Supp. 742 (S.D.N. Y.1967), and *Eazor,* 101 M.C.C. 719 (1966), as well.

In the *Eazor* matter, applicant filed a petition for authorization to purchase certain operating rights, which application was approved by the hearing examiner. Division 3 reversed that order and imposed restrictions on the desired authority. The same division then denied applicant's petition for reconsideration. While the Commission subsequently denied applicant's petition for a finding that the proceeding involved an issue of general transportation importance, on its own motion, it reopened the proceedings on the existing record. It said:

"This Commission believes that the limitation in the statute and the rules issued pursuant thereto is a limitation upon the right of a party to seek reconsideration but in no way runs to the power of the Commission to reconsider. The right of an administrative body to reconsider at any time is inherent in the power to decide and is a necessary procedure in order to permit an administrative agency to carry out properly its functions under the enabling statutes. If we were precluded from correcting the error that, as is hereinafter shown, we find was promulgated in the prior report, justice would be thwarted and would only result in imposing a totally unnecessary burden on a reviewing court to remand the proceeding to us for reconsideration. Despite the desirability of finality, the public interest demands that the right result be reached. Cf. Erie R. Co. vs. United States, 64 F.Supp. 162, 1963 (1945); Shein vs. United States, 102 F.Supp. 320, 323, affirmed 343 U.S. 944 [72 S.Ct. 1043, 96 L.Ed. 1349]." 101 M. C.C. at 720.

The Commission suggested that there is a difference between administrative finality for the purpose of judicial review and with respect to the jurisdiction of the Commission over its own orders.

"In amending section 17(6), Congress has provided a procedure to permit

more expeditious handling of cases by the Commission. Simply because the Commission sought to achieve expedition by prescribing rules limiting the right of parties to apply for reconsideration, thus permitting compliance with the requirement that all administrative remedies be exhausted before judicial review could be obtained does not mean that the Commission is foreclosed from taking further administrative action. The provisions of the Interstate Commerce Act pertinent here, section 16(6), 17(6), 17(7), 205(h), and 221(b), give this Commission a continuing jurisdiction over its orders and empowers it to reconsider and rescind, change or modify them on its own motion at any time. Alamo Express, Inc. v. United States, 239 F.Supp. 694, 697–98 (1965); affirmed 382 U.S. 19 [86 S.Ct. 83, 15 L.Ed.2d 14] (1965); Sprague v. Woll, [7 Cir.,] 122 F.2d 128, 130–31 (1951); certiorari denied 314 U.S. 669 [62 S.Ct. 131, 86 L.Ed. 535]; Baldwin v. [Scott County] Milling Co., 307 U.S. 478, 484, [59 S.Ct. 943, 83 L.Ed. 1409] (1939); and Froeber-Norfleet v. Southern Ry. Co., 9 F.Supp. 409, 410–11 (1934). Congress was well aware of these provisions of the act when section 17(6) was amended and never sought to amend them in any fashion. Had Congress intended to limit reconsideration by the entire Commission, it would have so provided in explicit language. Since there can be no repeal of express powers by implication, our continuing jurisdiction over orders and our power to reach a proper result remains unimpaired. [New York] New Haven [& Hartford] R.R. v. Interstate Commerce Commission, 200 U.S. 361, 401 [, 26 S.Ct. 272, 50 L.Ed. 515]; United States v. Amer. Trucking Ass'ns, 310 U.S. 534, 549, [60 S.Ct. 1059, 84 L.Ed. 1345]. Moreover, it is to be noted that a certificate has not been issued in this proceeding and that this Commission not only has the right but sometimes the duty to reopen a pending proceeding at any time prior to the issuance of a certificate. United States vs. Rock Island [Motor Transit] Co., 340 U.S. 419, 445, 447–48 [, 71 S.Ct. 382, 95 L.Ed. 391] (1951)."

101 M.C.C. at 720–21.

In *Resort,* a Review Board reversed an examiner's recommendation of a grant and denied the application, which denial was affirmed on petition for reconsideration by Appellate Division 1. Following another petition for reconsideration by the applicant, Appellate Division 1 reopened the proceeding on the existing record, reversed itself and granted the application. See Mountain View Coach Lines, Inc., Extension—Poughkeepsie, 100 M.C.C. 24, 25 (1965). In federal court, plaintiff Resort contended that the Appellate Division lacked jurisdiction to reconsider and reverse its original decision and order. The court said:

"* * * While it is true, as Resort contends, that no section of the Interstate Commerce Act (Act) states, in haec verba, that an Appellate Division may reconsider its own actions, we believe that it has the power to do so, at least prior to the time that an actual certificate of convenience and necessity has been issued."

264 F.Supp. at 744–745.

After briefly reviewing 49 U.S.C. §§ 16(6), 17(1), 17(6), and 321(b), it continued with:

"These provisions have been interpreted as giving the Commission continuing jurisdiction to suspend, reconsider or modify its orders, see e. g., Alamo Express, Inc. v. United States, 239 F. Supp. 694 (W.D.Tex.), aff'd per curiam, 382 U.S. 19, 86 S.Ct. 83, 15 L. Ed.2d 14 (1965); United States v. Interstate Commerce Commission, 221 F.Supp. 584 (D.D.C.1963), even in the absence of a petition for reconsideration, see Sprague v. Woll, 122 F.2d 128 (7th Cir. 1941), cert. denied, 314 U.S. 669, 62 S.Ct. 131, 86 L.Ed. 535 (1942). And the Supreme Court has

stated that 'the certificate is the final act or order that validates the operation. Until its form and content are fixed by delivery to the applicant, the power to frame it in accordance with statutory directions persists.' United States v. Rock Island Motor Transit Co., 340 U.S. 419, 448, 71 S.Ct. 382, 398, 95 L.Ed. 391 (1951)."

264 F.Supp. at 745.

Both *Eazor* and *Resort* are factually distinguishable from the instant case. While in *Eazor* and the instant case the Commission, on its own motion, reopened the proceedings on the present record, in *Eazor* a petition, albeit for another purpose, was before the Commission, while here the Commission had apparently completed its work six months prior to reopening the case. Unlike *Resort*, this is not a situation where an Appellate Division reconsidered one of its own orders upon receipt of a petition from one of the parties. See 264 F.Supp. at 745 n. 5. Rather, the full Commission, on its own motion, reviewed a decision of one of its appellate divisions.

Both *Resort* and *Eazor* relied on Alamo Express, Inc. v. United States, 239 F.Supp. 694 (W.D.Texas 1965), aff'd per curiam 382 U.S. 19, 86 S.Ct. 83, 15 L. Ed.2d 14 (1965). Here, again, the Commission reversed a prior order and granted an application which had first been denied.

"The Interstate Commerce Act itself gives the Commission a continuing jurisdiction over its orders, thereby allowing it to modify and even rescind a great number of them at any time, Sections 17(6), 17(7) and 221(b) of the Interstate Commerce Act. There appears to be no such cut-off date, after which the Commission could not rescind or modify its orders, as is found in the National Labor Relations Act, 29 U.S.C. § 160(e) which prevents such action by the agency after the filing of the administrative transcript with the reviewing court * * *."

239 F.Supp. at 697–698.

Yet, this case is also factually distinguishable for the Commission had specifically delayed the effective dates of its original orders and allowed for the filing of petitions for reconsideration. *Id.* at 698. See Tri-B Corporation, Shelby, Iowa v. ICC, 253 F.Supp. 715 (1966). Baldwin v. Scott County Milling Co., 307 U.S. 478, 484, 59 S.Ct. 943, 83 L.Ed. 1409 (1939) and Sprague v. Woll, 122 F.2d 128, 130–131 (7th Cir. 1941) can be distinguished similarly as cases in which proceedings were reopened on the petition of a party or on the basis of petitions in similar proceedings.

In sum, we think the logic of *Transamerican* compels a decision that the Commission has no power to review a decision of an Appellate Division. Moreover, even if one accepts a judicial amendment to Section 17(7) to allow such review or if one construes the administrative action in this matter to be a reversal of the Review Board, and not an appellate division, a further problem remains. While a number of cases deal with the nature of continuing administrative jurisdiction, we find no previous case has squarely presented the question of whether the Commission, on its own motion and without any related or similar matter before it, may reopen a proceeding. The statutes and the rules, we think, deal exclusively with the right of a party to petition the Commission, and do not deal specifically with the right or prerogative of the Commission to act on its own volition.

Now, while the majority has held that the Commission, on its own motion, may reconsider and set aside a decision of an Appellate division, it has also recognized that the Commission's powers are not unlimited. See, e. g., Upjohn Co. v. Pennsylvania R.R. Co., 381 F.2d 4 (6th Cir. 1967) (Commission may not retroactively apply new policy after a three year lapse); Black Ball Freight Service v. United States, 298 F.Supp. 1006 (W.D. Wash.1969) (Commission may not reopen proceeding after Court has stayed Commission order). Aside from its all

too easy disregard of the *Transamerican* case, the real difficulty with the majority opinion is that it raises more problems than it solves. In failing to establish standards to guide administrative agencies, the opinion almost invites administrative reconsideration every time an order is or is about to be contested in court.

To suggest, generally, that the Commission may reconsider any order at any time on its own motion prior to the issuance of a certificate of public convenience and necessity is unwarranted. While this would set some definite time for administrative finality in cases where such a certificate was issued, in situations such as the one which gave rise to this action, where the application for such a certificate was rejected, the case would remain openable indefinitely. Such a result would possibly subject the Commission to continued and increasing pressures over a long period of time to reconsider a particular problem. Other than to correct "purely inadvertent ministerial errors," Upjohn Co. v. Pennsylvania R.R. Co., 381 F.2d 4, 5 (6th Cir. 1967), we would be more consistent if we found that a negative order by the Commission rejecting an application for the requisite certificate constituted administrative finality and foreclosed further Commission consideration of the matter. Cf. City of Chicago v. United States, 396 U.S. 162, 90 S.Ct. 309, 311–312, 24 L.Ed.2d 340 (1969). That is, a firm decision regarding the certificate, whether positive or negative, would both permit redress in the courts and preclude further administrative consideration, whether initiated by the parties or by the Commission. If one does not choose such a clearly defined point of finality then one is faced with a dilemma which has been phrased as follows:

"Re-examination and reconsideration are among the normal processes of intelligent living. Admittedly no warranty of correctness or fitness attaches to a decision or an action simply because it is a thing of the past. Every-day experience teaches the contrary: while the choice first made may well remain the course ultimately followed, often enough it is found on further considereration to require revision. On the other hand, constant re-examination and endless vacillation may become ludicrous, self-defeating, and ever oppressive. Whether for better or for worse so far as the merits of the chosen course are concerned, a point may be reached at which the die needs to be cast with some 'finality.' An opposition may thus develop between the right result and the final one."

Weiss, Administrative Reconsideration: Some Recent Developments in New York, 28 N.Y.U.L.Rev. 1262 (1953). See also, Civil Aeronautics Board v. Delta Airlines, 367 U.S. 316, 81 S.Ct. 1611, 6 L.Ed.2d 869 (1961).

Some years ago, a recognized authority in the field of administrative law, Professor Kenneth C. Davis, summarized the questions to be resolved by an agency or the courts when faced with this dilemma:

"When statutes are silent and legislative intent unclear, agencies and reviewing courts must work out the practices and the limits on reopening. The consideration affecting reopening to take account of new developments or of new evidence of old developments often differ from those affecting the correction of mistakes or shifts in judgment about law or policy. Usually the search for a basic principle to guide reopening is futile; the results usually must reflect the needs that are unique to each administrative task. Factors to be weighed are the advantages of repose, the desire for stability, the importance of administrative freedom to reformulate policy, the extent of party reliance upon the first decision, the degree of care or haste in making the earlier decision, the general equities of each problem."

2 Davis, Administrative Law Treatise Ch. 18, § 18.09, at 607 (1958).

Even if one accepts the distinction between administrative finality for the purpose of pursuing judicial remedies and administrative finality for the purposes of further internal administrative action, we think it clear that repose and stability are to be accorded the greatest weight in this system of administrative law. The majority opinion encourages neither.

Nor is it clear that judicial economy is achieved by permitting reconsideration on the Commission's own motion. As is amply demonstrated by this case, if reconsideration is allowed, the federal courts will undoubtedly be asked to decide whether such reconsideration is appropriate in each factual situation. Indeed, allowing reconsideration would be doubly oppressive on the courts for a judicial decision would have to be made on the issue of reconsideration as well as on the merits of the Commission's action.

Conversely, in the typical situation, restricting administrative "self-correction" will not result in any uncorrectable injustice. If the Commission's error is serious, that is, not based on substantial evidence, then the aggrieved party may gain relief in court. If the matter before the Commission is closely contested and different results may be reasonably said to be based on substantial evidence, allowing the Commission to change its mind achieves little in regard to administrative justice or better interstate commerce, though it obviously has a serious effect on the immediate parties. In sum, once an administrative decision is final enough to be judicially cognizable, then major administrative errors can be corrected under the substantial evidence doctrine and minor errors or changes of evaluation are not sufficiently important to require or permit renewed administrative consideration.

We would agree with the majority that in this case there is no real indication that any party relied to its detriment on the original order. However, the absence of a clear harm does not outweigh the disadvantages to the system which we see in permitting the Commission, on its own motion, to reopen a matter which has been closed for six months.

In this particular case, moreover, there is no indication that the earlier decision was not based on a careful study of the situation. While the Commission may never have been required to apologize for correcting an error, in contrast to the majority viewpoint, we think that the Commission should state why its previous decision was incorrect and what prompted the reevaluation. Openness, not secrecy, should be the rule. Otherwise, such reconsiderations, if they continue, will only foster justified skepticism concerning the integrity of the administrative decisional process.

Were we to reach the merits of this action, we would agree that the Commission's latest decision is supported by substantial evidence. Had the original decision been before us, in view of the limited review powers which a court possesses, City of Chicago v. United States, 300 F.Supp. 115, 118 (N.D.Ill. 1969), we might have found that the opposite decision also was supported by substantial evidence. All of this reinforces our belief that the Commission's reconsideration produced an inordinate amount of waste of administrative and judicial time and money with little effect on the smooth operations of interstate commerce. Whether one adopts Transamerican or weighs the factors set forth by Prof. Davis, such a result is not justified.