**F. B. LEE, Administrator of Civil Aeronautics, Petitioner,**

v.

**CIVIL AERONAUTICS BOARD, Respondent,**

**Lewis H. Brubaker and Charles E. Olsen, Intervenors.**

No. 12433.

United States Court of Appeals District of Columbia Circuit.

Argued April 13, 1955.

Decided June 9, 1955.

Mr. Robert P. Boyle, Gen. Counsel, Civil Aeronautics Administration, for petitioner. Mr. Sherman O. Morris, Atty., Civil Aeronautics Administration, also entered an appearance for petitioner.

Mr. O. D. Ozment, Atty., Civil Aeronautics Board, with whom Messrs. Emory T. Nunneley, Jr., Gen. Counsel, Civil Aeronautics Board, at time record was filed, John H. Wanner, Associate Gen. Counsel, Civil Aeronautics Board, and James L. Highsaw, Jr., Chief, Litigation and Research Division, Civil Aeronautics Board, were on the brief, for respondent. Mr. Franklin M. Stone, Gen. Counsel, Civil Aeronautics Board, also entered an appearance for respondent.

Mr. Robert L. Stern, Chicago, Ill., with whom Messrs. Leo F. Tierney, Chicago, Ill., and James Francis Reilly, Washington, D. C., were on the brief, for intervenors. Mr. Joseph A. Reilly, Washington, D. C., also entered an appearance for intervenors.

Mr. Lloyd Fletcher, Jr., filed a brief on behalf of Air Line Pilots Association, International, as amicus curiae, urging affirmance.

Before EDGERTON, PRETTYMAN, and FAHY, Circuit Judges.

EDGERTON, Circuit Judge.

The Administrator of Civil Aeronautics seeks review of the Civil Aeronautics Board's dismissal of complaints in which he asked the Board to suspend, for violation of Civil Air Regulations, the certificates of certain pilots. Section 1006 (a) of the Civil Aeronautics Act of 1938, as amended,[1] authorizes a court of appeals to review an order of the Board upon petition of "any person disclosing a

---

1. 52 Stat. 1024, 49 U.S.C.A. § 646.

substantial interest in such order." Appellant says his responsibility for enforcement of statutory safety provisions and Board regulations gives him this "substantial interest".

The Civil Aeronautics Act of 1938 created the Civil Aeronautics Authority, consisting of five members,[2] and empowered it to make and enforce safety regulations.[3] The Act also provided that "There shall be in the Authority an Administrator"[4] and directed him to "cooperate with the Authority in the administration and enforcement of this Act".[5] The Authority named him "Supervisor for the Authority" and delegated to him "supervisory administrative powers over the Bureau of Safety Regulation", whose attorneys, employees of the Authority, prosecuted suspension proceedings.

In 1940, Reorganization Plan No. III transferred from the Civil Aeronautics Authority to the Administrator, whom it renamed Administrator of Civil Aeronautics, the "functions of aircraft registration and of safety regulation described in Titles V and VI of the Civil Aeronautics Act of 1938, except the functions of prescribing safety standards, rules, and regulations and of suspending and revoking certificates after hearing * * *."[6] Reorganization Plan No. IV changed the name Civil Aeronautics Authority to Civil Aeronautics Board, transferred the Board for housekeeping purposes to the Department of Commerce, placed the Administrator "under the direction and supervision of the Secretary of Commerce", and provided that the "Administrator of Civil Aeronautics * * * and the Civil Aeronautics Board * * * shall constitute the Civil Aeronautics Authority within the Department of Commerce."[7]

Nothing in the Reorganization Plans diluted the control of the Board, formerly the Authority, over suspension proceedings, or changed the function of the Administrator in such proceedings. His function continued to be like that of administrative prosecutors in other agencies. His only interest, like that of the Board, in suspension proceedings is in promoting air safety by enforcing the Civil Aeronautics Act. Final decision regarding suspension for violation of regulations continues to rest with the Board.

■■ We think it follows that the Administrator is not what the Act means by "any person disclosing a substantial interest" in the Board's order, and lacks standing to petition for review. The right to review of agency action is usually restricted to persons whom the agency regulates and affects adversely.[8] When one government agency has been found to have standing to seek review of another government agency's action, the two agencies have had different interests, e. g., when the government as shipper or consumer challenges an administrative rate order.[9] We have found no case in which agency action has been reviewed on the application of an official whose function is to prosecute claims in

2. 52 Stat. 980, 49 U.S.C.A. § 421(a).

3. Title VI; 52 Stat. 1007, 49 U.S.C.A. § 551 et seq.

4. 52 Stat. 981, 49 U.S.C.A. § 421(b).

5. 52 Stat. 985, § 301, 49 U.S.C.A. § 451.

6. Sec. 7, 54 Stat. 1233, 5 U.S.C.A. § 133t note.

7. Sec. 7, 54 Stat. 1235–6, 5 U.S.C.A. § 133t note.

8. Administrative Procedure Act, § 10(a), 60 Stat. 243, 5 U.S.C.A. § 1009(a).

9. United States ex rel. Chapman v. Federal Power Commission, 1953, 345 U.S. 153, 73 S.Ct. 609, 97 L.Ed. 918; United States v. Interstate Commerce Commission, 1949, 337 U.S. 426, 69 S.Ct. 1410, 93 L.Ed. 1451; Summerfield v. Civil Aeronautics Board, 1953, 92 U.S.App. D.C. 256, 207 F.2d 207, affirmed 1954, Delta Air Lines v. Summerfield, 347 U.S. 74, 74 S.Ct. 350, 98 L.Ed. 513; Summerfield v. Civil Aeronautics Board, 1953, 92 U.S.App.D.C. 248, 207 F.2d 200, affirmed Western Air Lines v. Civil Aeronautics Board, 1954, 347 U.S. 67, 74 S. Ct. 347, 98 L.Ed. 508; United States v. Public Utilities Commission, 1945, 80 U.S.App.D.C. 227, 151 F.2d 609.

and for the same agency. We think the purpose of the present review provision was not to permit litigation between the Administrator and the Board but to allow relief to persons aggrieved by the Board's actions.

Petition dismissed.

PRETTYMAN, Circuit Judge (dissenting).

As I read Reorganization Plans III[1] and IV[2] of 1940, the Administrator of Civil Aeronautics became an official responsible to the Secretary of Commerce and wholly independent of the Civil Aeronautics Board. The Board must exercise its adjudicatory functions independently of the Secretary.[3] The legislative history of the Plans emphasizes the clarity of the texts. In safety enforcement actions, if the Administrator seeks a suspension or a revocation of a safety certificate, he files a complaint with the Board. The complaint is in his own name. The regulations provide:

*"Who may initiate proceedings —(a) Administrator or applicant for airman certificate.* A proceeding for suspension or revocation of a certificate may be initiated by the Administrator of Civil Aeronautics as Complainant by filing a complaint with the Board."[4]

The matter proceeds exactly as if it were initiated by some other complainant. The Board acts on the matter as a quasi-judicial body, upon the issues and the evidence presented to it by the parties. Thus the Administrator is in the proceeding as a party, in his own name and his own separate official capacity. He is not like the enforcement staff in the usual administrative agency proceeding, or even like the General Counsel to the National Labor Relations Board, who brings complaints on behalf of the Board.[5] The Administrator thus has an individual responsibility to carry, as is clearly indicated by the Reorganization Plans. It is a responsibility in the public interest. It is not too different from the official responsibility of the Postmaster General in respect to ail mail pay proceedings before the Board. We held him to be a party in interest in such proceedings and allowed him to seek review,[6] and the Supreme Court affirmed.[7]

It seems to me clear that the duly authorized complainant in an adjudicatory proceeding before a quasi-judicial board has a "substantial interest"[8] in the matter. If he has enough interest to be the official complainant in an adjudicatory proceeding, he has enough interest to seek review of the decision in that same proceeding. It follows that, in my opinion, the Administrator has a standing to petition for judicial review in the proceeding at bar. I would not dismiss.

On the merits of the controversy I would affirm.

Two airplane pilots were involved in an accident. The Civil Aeronautics Board investigated and called upon the pilots to testify. They claimed the privilege of the self-incrimination clause of the Fifth Amendment and of the Act.[9] The hearing officer directed them to testify; they complied. A complaint seeking suspension of their certificates was filed. The Board held it could not suspend, because the statute forbids it, the men having been compelled to testify against themselves.

1. 54 Stat. 1231.

2. 54 Stat. 1234.

3. Sec. 7(c) of Plan IV.

4. 14 C.F.R. § 301.1 (Rev.1952).

5. 61 Stat. 139 (1947), 29 U.S.C.A. § 153(d).

6. Summerfield v. Civil Aeronautics Board, 1953, 92 U.S.App.D.C. 248, 207 F.2d 200.

7. Western Air Lines v. Civil Aeronautics Board, 1954, 347 U.S. 67, 74 S.Ct. 347, 98 L.Ed. 508.

8. 52 Stat. 1024 (1938), as amended, 49 U.S.C.A. § 646.

9. Sec. 1004(i), 52 Stat. 1021 (1938), as amended, 49 U.S.C.A. § 644(i).

The suspension of these pilots would be a forfeiture of a privilege, even if not of a right. The immunity statute [10] extends to forfeitures as well as to penalties. The question, then, is whether the proceeding is punitive or merely remedial. In this connection we go to the Fifth Amendment cases. Any reading of the complaint shows the action prayed is purely punitive. The complaint says baldly that the men were careless and therefore ought to be suspended. It does not allege the pilots to be unqualified. I think they were protected by reason of their testimony taken in the investigation.

In substance the result I reach is the same as that reached by the court. The court dismisses the petition and so leaves the Board's order intact. I would take jurisdiction and affirm the order.