ESSEX COUNTY WELFARE BOARD, APPELLANT, v. DE-
PARTMENT OF INSTITUTIONS AND AGENCIES AND
SONDRA ENGLE, RESPONDENTS.

ESSEX COUNTY WELFARE BOARD, APPELLANT, v. DE-
PARTMENT OF INSTITUTIONS AND AGENCIES AND
IRENE STOWERS, RESPONDENTS.

ESSEX COUNTY WELFARE BOARD, APPELLANT, v. DE-
PARTMENT OF INSTITUTIONS AND AGENCIES AND
ANN GRIECO, RESPONDENTS.

IN THE MATTER OF THE ESSEX COUNTY WELFARE
BOARD (LOUISE BROWN).

CAMDEN COUNTY WELFARE BOARD, APPELLANT, v.
LINDA PERAZZELLI AND DEPARTMENT OF INSTITU-
TIONS AND AGENCIES, RESPONDENTS.

CAMDEN COUNTY WELFARE BOARD, APPELLANT, v. DE-
PARTMENT OF INSTITUTIONS AND AGENCIES AND
ARLENE GIBSON, RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued November 23, 1976—Decided January 31, 1977.

Before Judges MATTHEWS, SEIDMAN and HORN.

*Ms. Susan J. Barone* and *Mr. Joseph P. Brennan, Jr.* argued the cause for the Essex County Welfare Board (*Mr. William J. Tamburri,* Counsel, Essex County Welfare Board, attorney).

*Mr. Frank A. Demonsi* argued the cause for the Camden County Welfare Board (*Ms. Mary E. Dugdale,* Chief Counsel, Camden County Welfare Board, attorney).

*Mr. Richard M. Hluchan,* Deputy Attorney General, argued the cause for respondent Department of Institutions and Agencies (*Mr. William F. Hyland,* Attorney General, attorney; *Mr. Stephen Skillman,* Assistant Attorney General, of counsel).

*Mr. Allen Zaks,* of Rutgers Legal Aid Clinic, argued the cause for respondent Stowers.

The opinion of the court was delivered by

MATTHEWS, P. J. A. D. The single issue with which we deal in these cases is whether a county welfare board, which has terminated or reduced a recipient's grant to public assistance, available through the program of Aid to Families with Dependent Children (AFDC), may obtain judicial review from a final fair hearing of the Division of Public Welfare in which the Director reversed or revised the decision of the board.

Procedurally, the issue before us is presented by the Attorney General's motions to dismiss the captioned appeals and, in Docket A-2733-75, the motion of the welfare board to reinstate. We do not deal with the merits of any of the appeals; however, we make brief reference to the facts involved in each to establish the context in which the motions to dismiss and reinstate have been made.

In A-1780-75 respondent Engle applied on August 6, 1975 to the Essex County Welfare Board for Aid to Families with Dependent Children (AFDC), a public assistance program funded jointly by the State and Federal Governments. 42 *U. S. C. A.* § 601 *et seq.; N. J. S. A.* 44:10-1 *et seq.* Since her application indicated that she was immediately in need of assistance, the board issued her a "presumptive eligibility" grant in the amount of $310 by authority of the Public Assistance Manual (PAM), a compendium of the New Jersey public assistance regulations promulgated by respondent Department of Institutions and Agencies. Specific authority for "presumptive eligibility" is contained in PAM § 1120, which provides:

\* \* \* When immediate need is apparent and applicant provides evidence of eligibility by written statement signed under oath, the director of the county welfare board shall issue a grant effective as of the date of the application.

Once a "presumptive eligibility" grant is issued, it is the county welfare board's duty to investigate the recipient's eligibility in order either to validate her eligibility or determine that she is ineligible for assistance. This process must be completed within two months. However, the county board's interim failure to take final action on an application must not operate to penalize the recipient. Thus, the recipient remains presumptively eligible until her case is either validated or deemed ineligible. PAM §§ 2910, 3110, 4311.

Although Ms. Engle received an AFDC check for August due to her "presumptive eligibility," no check was issued to her by the Essex County Welfare Board for the month of

September, nor did she receive any notice to the effect that a September check would not be forthcoming. On September 25, 1975, however, the board concluded as a result of its investigation that she was ineligible for AFDC assistance and sent her written notice of this determination on the same date.

In exercise of her rights under 45 *C. F. R.* § 213 and PAM § 6000, Ms. Engle requested an administrative fair hearing to contest the Essex County Welfare Board's failure to issue a grant to her for the month of September as well as the board's final denial of her application on September 25. As a result of the hearing, which was conducted on November 17, 1975, the Division of Public Welfare affirmed the board's denial of Ms. Engle's application but ruled that she should have been issued a "presumptive eligibility" grant on September 1 absent a ten-day notice from the board specifying why it would not make such a payment. The Division ordered the board to pay Ms. Engle the amount of the withheld September grant retroactively.

Respondent Engle did not appeal from the denial of AFDC eligibility, but the Essex County Welfare Board, on January 28, 1976 filed a notice of appeal challenging only the Division's decision that she should have been granted a "presumptive eligibility" payment for September. On February 20, 1976 we granted appellant's motion for a stay of the fair hearing decision pending the disposition of the merits of this case.

In A–2080–75 respondent Stowers applied on September 3, 1975 to the Essex County Welfare Board for AFDC. The board failed to process the application and no adequate written explanation for denying assistance was forthcoming.

Respondent thereafter requested a fair hearing, which was conducted on October 29, 1975. As a result thereof the Director of the Division of Public Welfare directed the Essex County Welfare Board to proceed to determine Ms. Stowers' eligibility and grant AFDC retroactive to the date of the application. The board was further directed to register her

for manpower services, training or employment, in accordance with Public Assistance Manual, § 3400.

The board filed a notice of appeal from this determination. Moreover, the board applied for, and on March 16, 1976 we granted, a stay of the implementation of that decision pending disposition of the appeal on the merits.

In A-2381-75 respondent Grieco is a recipient of AFDC on behalf of herself and her two minor children. The Essex County Welfare Board proposed to reduce Ms. Grieco's grant due to her alleged failure to report certain income to the board.

Respondent then requested a fair hearing, which was conducted on December 10, 1975. As a result thereof the Director of the Division of Public Welfare reversed the Essex County Welfare Board's decision to reduce her grant. The board then appealed.

In A-2733-75 the Essex County Welfare Board notified respondent Brown on November 19, 1975 that her entitlement to public assistance payments pursuant to the AFDC program was being terminated. Respondent requested and was granted an administrative fair hearing to contest the board's determination, and on March 15, 1976 the Division of Public Welfare reversed the board's action and directed that she be retroactively reinstated into the AFDC program for reasons which are of no pertinence here. The board appealed.

Thereafter, on August 23, 1976, we dismissed the appeal on our own motion because no brief had been filed by the welfare board. *R.* 2:9-9. The board now moves to vacate the order of dismissal, claiming that its brief was in fact filed on August 20, 1976.

In A-2882-75 respondent Perazzelli is a recipient on behalf of her four minor children of public assistance under AFDC. The Camden County Welfare Board, on December 18, 1975, notified respondent of its intent to reduce her assistance benefits by $322, the amount of the monthly mortgage payments made by her estranged husband on her home.

Respondent thereafter requested the convening of a fair hearing, which was conducted on February 19, 1976. As a result thereof the Director of the Division of Public Welfare revised the Camden County Welfare Board's decision to reduce her grant. The board then appealed.

In A–3891–75 respondent Gibson is a recipient on behalf of herself and her two minor children of AFDC. The Camden County Welfare Board proposed to terminate Ms. Gibson's grant for failure to provide certain information.

Respondent therefore requested a fair hearing, which was conducted on April 13, 1976. As a result thereof the Director of the Division of Public Welfare reversed the Camden County Welfare Board's decision to terminate her grant and directed that assistance be reinstated retroactively. The appeal followed.

The welfare boards contend that they are entitled to judicial review by virtue of the following factors: (1) in New Jersey the courts have traditionally taken a liberal approach to the question of standing; (2) although the pertinent federal regulations, 42 *U. S. C. A.;* § 602(a)(3), 45 *C. F. R.* 205.100 (b)(3), were designed to vest the administrative authority for AFDC in the "single State Agency," since the boards are not seeking to override the Division of Public Welfare's determinations but are merely seeking review of its decisions, the ultimate authority of the Division would not be undercut by this action; (3) since the county taxpayers supply approximately 13% of the funds necessary to support the AFDC program, the boards have a financial interest in the outcome, and (4) should it be determined that the welfare boards are not entitled to judicial review, the taxpayers of the county would be without a party to represent their financial interest.

The majority rule appears to be that a subordinate official or agency does not have standing to challenge the decision of a superior administrative board. *Lee v. Civil Aeronautics Board,* 96 *U. S. App. D. C.* 299, 225 *F.* 2d 950, 951 (D. C. Cir. 1955); *State v. Donnelly,* 365 *Mo.* 686, 285

S. W. 2d 669 (Sup. Ct. 1956); *Reed v. New York St. Dept. of Social Services*, 78 *Misc.* 2d 266, 354 *N. Y. S*. 2d 389, 394 (Sup. Ct. 1974). See also, *Jaffe, Judicial Control of Administrative Action*, 538 at n. 133 (1965); Davis, "Standing of a Public Official to Challenge Agency Decisions: A Unique Problem of State Administrative Law," 16 *Admin. L. Rev.* 163, 170–71 (1964).

However, when a public officer or authority proceeds by an action in lieu of prerogative writs, the situation is distinguishable. See *Jaffe, op. cit.* at 538. In this regard it has been pointed out that "New Jersey * * * occupies a rather special position in administrative law," *Jaffe, op. cit.* at 535, due in part to the fact that

* * * judicial review of administrative agency decisions has the support of a special constitutional provision. *N. J. Const.* (1947), Art. VI, § 5, ¶ 4. This constitutional underpinning of the right of judicial review largely immunizes it from legislative curbs. *In re Senior Appeals Examiners*, 60 *N. J.* 356 (1972). The court rule which implements the constitutional provision provides for review as of right of final decisions of state agencies. *R.* 2:2–3(a)(2). * * * [*State v. Council of N. J. State College Locals*, 141 *N. J. Super.* 470, 474 (App. Div. 1976)]

Our State has consistently been recognized as the "'jurisdiction in which judicial review has been most freely available with the least encumbrance of technical apparatus.'" *In re Senior Appeals Examiners*, 60 *N. J.* 356, 363 (1972). Consequently, we have consistently held that:

In our State, perhaps more than any other, the prerogative writ has been broadly made available as a comprehensive safeguard against wrongful official action. [*Walker v. Stanhope*, 23 *N. J.* 657, 661 (1957)]

█ Of equal importance is the fact that it has also been long established in this State that a taxpayer has standing to challenge illegal disbursements of public funds or other wrongful conduct. *Ferry v. Williams*, 41 *N. J. L.* 332, 339 (Sup. Ct. 1879); *Haines v. Burlington Cty. Bridge Ass'n.*,

1 *N. J. Super.* 163, 171 (App. Div. 1949); *Crescent Pk. Tenants Ass'n. v. Realty Eq. Corp. of N. Y.*, 58 *N. J.* 98, 102 (1971). Traditionally, an action by taxpayers in lieu of prerogative writ has been utilized to seek review of such official action. See, *e. g.*, *Ferry v. Williams,* above; *Koch v. Seaside Heights,* 40 *N. J. Super.* 86, 93 (App. Div. 1956), aff'd 22 *N. J.* 218 (1956). See generally, *Jaffe, op. cit.* at 468, 473.

While the county welfare boards here involved are not suing as individual taxpayers *per se,* " 'if the court will allow a citizen or taxpayer to sue, standing of a representative association would seem almost a fortiori.' " *Crescent Pk. Tenants Ass'n,* above, 58 *N. J.* at 106. In this case it is clear that since 12½% of the funds for the AFDC program is supplied by the various counties (37½% comes from the State and 50% from the federal level), the county welfare boards, in a representative capacity, have a financial interest directly related to the public interest. *Cf. Town of Milford v. Commissioner of Motor Vehicles,* 139 *Conn.* 677, 96 *A.* 2d 806, 808 (Sup. Ct. Err. 1953); *In re Halifax Paper Co.,* 259 *N. C.* 589, 131 *S. E.* 2d 441 (Sup. Ct. 1963).

■ ■ Our courts have accorded standing to a plaintiff who is neither a citizen or taxpayer but whose individual interest "coincided with a strong public interest," *Walker v. Stanhope,* above, 23 *N. J.* at 664. We conclude, *a fortiori,* that county welfare boards whose actions directly affect the public interest should be granted the right to seek judicial review.

We also find justification for the expressed concern that if the county welfare boards are not entitled to judicial review, the taxpayers of the counties involved would be without representation with respect to a final agency determination directly affecting their financial interests. See, *e. g., Scanwell v. Laboratories Inc. v. Shaffer,* 137 *U. S. App. D. C.* 371, 424 *F.* 2d 859, 866–867 (D. C. Cir. 1970) (where it was indicated that plaintiff in that case seemed to be the only person likely to institute the action).

Defendants, citing *Bonnet v. State,* 141 *N. J. Super.* 177 (Law Div. 1976), argue that the county welfare board's financial interest does not provide a sufficient basis to give plaintiffs standing. In *Bonnet* Essex County taxpayers, Essex County and 22 municipalities within the county, and other parties, instituted an action challenging the constitutionality of the State's participation in the public assistance program in which the counties are required to contribute 12½% of the costs. The trial judge concluded that the county did not have standing since it had failed to show "any of the statutes in question [had] prevented the county from rendering any essential service which it is authorized to provide. The county's interest in this is in its governmental capacity only." 141 *N. J. Super.* at 203. He further determined that "[n]either the county nor any other municipality ha[d] made a showing similar to that of Newark" (at 207), the latter having established that "its interest [was] the same as other taxpayers." (at 206).

*Bonnet* is clearly distinguishable since (1) plaintiffs there were seeking an injunction against the collection of taxes for the payment of these costs, 141 *N. J. Super.* at 191, and not a determination involving an agency's action, and (2) the trial judge was not presented with a situation, as here, where the county was the *only* party who had undertaken any action in this regard.

Finally, we find nothing in the federal regulations promulgated by HEW with respect to the "single State agency" requirement which bars the boards from seeking judicial review of Division determinations. The regulations in question which are relied upon by the Department read:

(1) The State agency will not delegate to other than its own officials its authority for exercising administrative discretion in the administration or supervision of the plan including the issuance of policies, rules and regulations on program matters.

(2) In the event that any rules and regulations or decisions of the single State agency are subject to review, clearance, or other action by other offices or agencies of the State government; the requisite authority of the single State agency will not be impaired.

(3) *In the event that any services are performed for the single State agency by other State or local agencies or offices, such agencies and offices must not have authority to review, change, or disapprove any administrative decision of the single State agency, or otherwise* substitute their judgment for that of the agency as to the application of policies, rules, and regulations promulgated by the State agency. [45 *C. F. R.* § 205.100(b). emphasis supplied]

In our view, the plain meaning of the foregoing prohibits a board from exercising review power on its own and does not deal in any wise with the *standing* of a board to such judicial review. The Attorney General conceded at oral argument that a citizen and taxpayer of a county would unquestionably have the right and standing to review Division determinations such as those involved in these appeals. We simply hold today that, at the minimum, the boards have standing to such judicial review as representatives of the citizens and taxpayers of a county. *Reed v. N. Y. State Dept. of Social Services,* 78 *Misc.* 2d 266, 354 *N. Y. S.* 2d 389, 394 (Sup. Ct. 1974), relied on by the Department, is not apposite since the conclusion that

* * * Within this intra-agency structure, non-compliance with the State Commissioner's adverse Fair Hearing decisions does not raise the local welfare official to the status of an aggrieved party sufficient to permit access to the courts. To hold otherwise would thrust the courts into a morass of administrative decision-making. [354 *N. Y. S.* 2d at 394]

was decided under New York law principles relating to standing.

The motions to dismiss in docket numbers A–1780–75, A–2080–75, A–2381–75, A–2882–75 and A–3891–75, are denied; the motion to reinstate in docket A–2733–75 is granted.