# Litigating Authority of the
# Regional Fishery Management Councils

The legislative history and general statutory framework of the Fishery Conservation and Management Act of 1976 indicate that Congress did not intend the Regional Fishery Management Councils to have litigating authority independent of the Department of Justice, so as to enable them to challenge in court a decision by the Secretary of Commerce taken under the FCMA and relating to the establishment of the Councils and their functions.

The Councils have neither express statutory authority nor that freedom from executive control that would give rise to some inference supportive of their having independent litigating authority.

The general rule against inter-agency and intra-agency lawsuits arises not only from a desire for centralized control of litigation, but also from the constitutional principle that disputes between entities subject to the control of the President should be resolved within the executive branch.

September 17, 1980

## MEMORANDUM OPINION FOR THE GENERAL COUNSEL, NATIONAL OCEANIC AND ATMOSPHERIC ADMINISTRATION

You have asked this Office whether Regional Fishery Management Councils (Councils), established by the Fishery Conservation and Management Act of 1976 (FCMA), 16 U.S.C. §§ 1801–82, may, on their own behalf, challenge in court a decision by the Secretary of Commerce (the Secretary) taken under the FCMA and relating to the establishment of the Councils and their functions.[1] We have concluded that the Councils do not have independent litigating authority, and cannot, therefore, challenge the Secretary's actions in court.

The FCMA "adopts a somewhat convoluted scheme to achieve its purposes of conservation and management of fishery resources." *Washington Trollers Ass'n* v. *Kreps*, 466 F. Supp. 309, 311 (W.D. Wash. 1979). This is at least in part the result of Congress' desire to effect a compromise between the need for federal control of the nation's marine resources and the states' desire for authority over "their" fish. *See* 122 Cong. Rec. 115 (1976); H.R. Rep. No. 948, 94th Cong., 2d Sess. 50 (1976); H.R. Rep. No. 445, 94th Cong., 1st Sess. 61–62 (1975);

---

[1] In your letter you raised two issues. The first, concerning boundaries between adjoining Councils, was addressed in our memorandum to you of December 14, 1979 [3 Op. O.L.C. 464 (1979)].

50 C.F.R. § 601.1 (1979). As originally drafted, this legislation provided that the Secretary and the Councils were to be coordinate authorities:

> The regional Councils are, in concept, intended to be similar to a legislative branch of government. . . . The Secretary of Commerce is given authority under the bill to act as the "executive," with ultimate authority to make decisions about management regulations for the entire nation. . . . Finally, section 204 establishes an appellate body, theoretically comparable to the judicial branch, the Fishery Management Review Board. . . . The concept of an administrative review board of this nature is not new (*i.e.*, the National Labor Relations Board) and will hopefully provide an independent review process with the ease of access and speed of decision that will give confidence to the decisionmaking process.

S. Rep. No. 416, 94th Cong., 1st Sess. 29 (1975). The Board "would have [had] exclusive and original jurisdiction to hear appeals from actions of the Secretary relating to fishery management. The purpose of the Board [was] to provide an independent review procedure for the settlement of disputes arising from the administration of the Act." *Id.* at 38–39.

Two groups could appeal to it:

> (1) Any person who is adversely affected or aggrieved by, or who suffers legal wrong through [a final rule, regulation or decision of the Secretary, and,] . . .

> (2) Any Council whose recommended management regulations were determined by the Secretary to be non-consistent with the national standards . . . .

*Id.* at 58 (proposed § 204(c)(1), (2)).

This provision was included because the Senate committee believed that:

> It is inevitable that disputes will arise with respect to fishery management decisions. To meet the need for dispute settlement, the bill establishes a Fishery Management Review Board. The Board, an independent quasi-judicial administrative body, would review disputes between the Secretary and the Regional Councils, as well as other disputes relating to fishery management decisions.

*Id.* at 5. Appeals from the Board to the Court of Appeals could only be brought by a person "who is adversely affected or aggrieved by, or who suffers legal wrong through, a decision of the Board . . . ," *not by a Council. Id.* at 59 (proposed § 204(g)).

779

The Board, however, did not become a part of the final version of FCMA. The House and Senate, having passed different versions of FCMA, deleted it in conference, stating:

> The implementation process provisions follow comparable provisions in the House bill and the Senate amendment [S. 961], except that . . . (2) the provisions in the Senate amendment establishing a 5-member, President-appointed "Fishery Management Review Board" to determine appeals from regulations promulgated by the Secretary is not included in the conference substitute in favor of judicial review.

H.R. Rep. No. 948, 94th Cong., 2d Sess. 55 (1976). Judicial review under FCMA is in accordance with the Administrative Procedure Act (APA). 16 U.S.C. §1855(d). Review under the APA is available to "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action. . . ." 5 U.S.C. § 702. The legislative history, therefore, indicates that Congress decided not to permit the Councils to challenge the Secretary's decision administratively.

Under the FCMA, the Councils' staff and administrative expenses are funded by Congress, and the disbursement of funds is controlled by the Secretary. 16 U.S.C. § 1852(f)(7). The Secretary appoints a majority of the voting members to their three-year terms. 16 U.S.C. § 1852(b)(3). He provides the guidelines for the fishery management plans, 50 C.F.R. § 602.1 *et seq.*, and has final responsibility for their development, 16 U.S.C. §§ 1854, 1855, and enforcement, 16 U.S.C. §§ 1856(b), 1858, 1861, and for promulgation of regulations. The Councils, on the other hand, have a purely advisory function under the statute. 16 U.S.C. § 1852(h). The Secretary can, if he wishes, develop a plan or implement a set of regulations of which a Council disapproves. 16 U.S.C. §§ 1854(c)(1)(B), (c)(2), 1855(c).

Given this framework, we believe that the Councils lack independent litigating authority. The conduct of litigation involving the United States or one of its agencies [2] is broadly reserved to the Department of

---

[2] Agencies include "any department, independent establishment, commission, administration, authority, board or bureau of the United States. . . ." 28 U.S.C. § 451. All of the opinions discussing the Councils' status under various statutes appear to place them in at least one of these categories. *See* Memorandum Opinion for the General Counsel, U.S. Department of Commerce, National Oceanic and Atmospheric Administration (NOAA) from Leon Ulman, Deputy Assistant Attorney General, Office of Legal Counsel, October 14, 1977 [1 Op. O.L.C. 239] (independent establishment under the Federal Tort Claims Act); memorandum for the Deputy General Counsel, Department of Commerce from the Assistant Attorney General, Civil Division, July 12, 1977 (agencies under Federal Tort Claims Act); memorandum for the Deputy General Counsel, NOAA, from a staff attorney, November 30, 1976 (agency under the Administrative Procedure Act); memorandum for the General Counsel, Department of Commerce from the General Counsel, NOAA (same); memorandum for the Acting General Counsel, Department of Commerce from the General Counsel, Office of Management and Budget, March 22, 1977 (statutory advisory committee); memorandum for the General Counsel, NOAA from the Assistant General Counsel, General Services Administration, September 30, 1977 (independent

Continued

Justice. 28 U.S.C. § 516. Without express authorization, an agency or department risks having the court dismiss its suit. *Interstate Commerce Comm'n* v. *Southern Railway Co.,* 43 F.2d 534, 536–38 (5th Cir. 1976); *Federal Trade Commission* v. *Guignon,* 390 F.2d 323, 324 (8th Cir. 1968); *Securities & Exchange Commission* v. *Robert Collier & Co.,* 76 F.2d 939, 940 (2d Cir. 1935); *Sutherland* v. *International Insurance Co.,* 43 F.2d 969, 970–71 (2d Cir.) (L. Hand, J.), *cert. denied,* 282 U.S. 890 (1930).[3] Under the FCMA itself, for example, the Secretary must refer civil penalty and forfeiture proceedings to the Attorney General for enforcement. 16 U.S.C. §§ 1858(c), 1860(b)(c). In enacting the FCMA, Congress considered—and rejected—a statutory scheme that would have permitted the Councils to challenge before an administrative body the Secretary's final decision. Congress knows how to draft a statute that would allow an agency to challenge a final order of another agency.[4] In the absence of any such express statutory authority, the Councils may not litigate against anyone, including the Secretary.[5] This will certainly *not* prevent states or individual council members from challenging the Secretary so long as they have standing to do so. *See, State of Maine* v. *Kreps,* 563 F.2d 1043, 1045 n.1 (1st Cir. 1977). This reading of the Councils' authority also is consistent with the general principle that statutes should be construed so as to avoid doubts regarding their constitutionality, *see generally, Kent* v. *Dulles,* 357 U.S. 116 (1958). As discussed below, construing the Councils to have such authority would raise a substantial constitutional question.

This general rule against inter- and intra-agency lawsuits arises not only from a desire for centralized control of litigation but also from the

establishment); memorandum for the General Counsel, NOAA from the Solicitor of Labor, October 19, 1979 (wholly owned instrumentality of the United States under the Social Security Act and Federal Employees' Compensation Act); memorandum for the Department of Commerce from the Chief, Wage, Excise and Administrative Provisions Branch, Internal Revenue Service, November 22, 1977 (wholly owned instrumentality under Federal Insurance Contributions Act). *But cf.* memorandum for the Assistant Secretary for Administration, Department of Commerce from the Acting General Counsel, United States Civil Service Commission, August 3, 1976 (public members not federal employees).

[3] *See The Gray Jacket,* 72 U.S. (5 Wall.) 370, 371 (1866); 5 U.S.C. § 3106; Exec. Order No. 12,146, § 1–4, *reprinted in* 28 U.S.C. § 509 App. at 1162 (Supp. III 1979); Exec. Order No. 6,166, § 5 (1933), *reprinted in* 5 U.S.C. §§ 124–32 App. at 159 (1964); P. Bator, P. Mishkin, D. Shapiro & H. Wechsler, Hart & Wechsler's *The Federal Courts & the Federal System* 1315–20 (2d ed. 1973 & 1977 Supp.).

[4] Under the Federal Coal Mine Safety Act of 1952 (the Act), for example, Congress set up a Coal Mine Safety Board of Review (the Board). 30 U.S.C. § 475 (1964). The Board could overrule decisions made by the Director of the United States Bureau of Mines. 30 U.S.C. § 477(a) (1964). The Act specifically provided, however, that the Director could then challenge any final order of the Board in the Court of Appeals. 30 U.S.C. § 478(a) (1964) ("upon the filing in such court of a notice of appeal by the Director . . . .") *See Director, United States Bureau of Mines* v. *Princess Elkhorn Coal Co.,* 226 F.2d 570 (6th Cir. 1955); *Director, United States Bureau of Mines* v. *Three Fork Coal Co.,* 222 F.2d 425 (4th Cir. 1955) (appeal dismissed as untimely). The Board was eliminated under the Federal Coal Mine Health and Safety Act of 1969. S. Rep. No. 411, 91st Cong., 1st Sess. 38 (1969). Instead, Congress substituted "traditional administrative and judicial procedures." *Id.* at 37–38. *See* 30 U.S.C. § 816(a)(1) (Supp. III 1979). *See also* Klaus, *The Taft-Hartley Experiment in Separation of NLRB Functions,* 11 Indus & Lab. Rel. Rev. 371 (1958).

[5] *See Lee* v. *Civil Aeronautics Board,* 225 F.2d 950, 951–52 (D.C. Cir. 1955); Davis, *Standing of a Public Official To Challenge Agency Decisions: A Unique Problem of State Administrative Law,* 16 Ad. L. Rev. 163, 167, 168 (1964).

constitutional structure of our government. Disputes between parts of the executive branch, each of which is ultimately responsible to the President, should be resolved within the executive branch. *See* Executive Order No. 12,146, § 1–4, *reprinted in* 28 U.S.C. § 509 App. at 1162 (Supp. III 1979). Independence of an agency from the executive's supervisory control may overcome this presumption.[6] The Councils, however, have neither express statutory authority nor that freedom from executive control that would give rise to some inference supportive of their having independent litigating authority. However independent the Councils may be in their day-to-day operations, ultimate authority over a majority of their membership,[7] budgets,[8] and their major area of concern—the fishery management plans—remains with the Secretary or other federal agencies. The Councils perform the basic research, hold hearings, draft the plan for their area, and propose regulations. 16 U.S.C. §§ 1852(h), 1853(c). It is the Secretary, however, to whom the drafts and proposals are submitted and it is the Secretary who either approves the management plan or amends it to his satisfaction. 16 U.S.C. § 1854. *See State of Maine* v. *Kreps*, 563 F.2d 1052, 1055–56 (1st Cir. 1977). It is also the Secretary who reviews the regulations to insure their legality and who implements them. 16 U.S.C. § 1855(c). That the Department of Commerce has found it most efficient to allow the Councils maximum leeway, *see* 50 C.F.R § 601.1 (1979), does not change an analysis based on the statutory framework. The Councils are subordinate parts of the Department of Commerce. Any attempt on their part to sue the Secretary would therefore raise a substantial constitutional question. .

We believe that the Councils are a part of the Department of Commerce and subject to its overall control. In the absence of specific contrary legislation, they must be represented in any court proceeding by the Secretary's lawyer, the Attorney General. Since the Councils cannot go into court without the Attorney General, the Councils have

---

[6] *See United States* v. *Nixon*, 418 U.S. 683, 694–95 (1974); *Federal Maritime Board* v. *Isbrandtsen*, 356 U.S. 481 (1958); *Secretary of Agriculture* v. *United States*, 347 U.S. 645 (1954); *Chapman* v. *FPC*, 345 U.S. 153 (1953); *ICC* v. *Jersey City*, 322 U.S. 503 (1944); *United States* v. *ICC*, 221 F. Supp. 584 (D.D.C. 1963); *Benson* v. *United States*, 175 F. Supp. 265 (D.D.C. 1959); *United States* v. *ICC*, 142 F. Supp. 741 (D.D.C. 1956).

[7] The Secretary appoints a majority of the voting members from lists submitted by each state's governor. 16 U.S.C. § 1852(b)(1)(B). The nonvoting members represent various federal agencies. 16 U.S.C. § 1852(c). Whether the Secretary may freely remove the voting members whom he appoints, 16 U.S.C. § 1852(b)(1)(C), need not be decided. It appears, however, that the Councils' functions are primarily executive, not legislative or judicial. *Wiener* v. *United States*, 357 U.S. 349, 351–53 (1958); *Lewis* v. *Carter*, 436 F. Supp. 958, 961 (D.D.C. 1977).

[8] The Secretary pays for the Councils' necessary staff and administration. 16 U.S.C. § 1852(f)(7).

no authority to bring suit on their own behalf to challenge a decision by the Secretary taken under FCMA and relating to the establishment of the Councils or their functions.

LARRY L. SIMMS
*Deputy Assistant Attorney General*
*Office of Legal Counsel*